**Lar DALY, Petitioner,**

v.

**UNITED STATES of America, and the Federal Communications Commission, Respondents.**

**No. 13030.**

United States Court of Appeals
Seventh Circuit.

Jan. 12, 1961.

Rehearing Denied Feb. 13, 1961.

Lar Daly, Charles V. Falkenberg, Chicago, Ill., Howard Newcomb Morse, Chicago, Ill., of counsel, for petitioner.

John L. Fitzgerald, General Counsel, Max D. Paglin, Asst. General Counsel, Joel Rosenbloom, Attorney, Federal Communications Commission, Washington, D. C., Richard A. Solomon, Attorney, U. S. Department of Justice, Washington, D. C., Robert A. Bicks, Asst. Atty. Gen., for respondent.

Before HASTINGS, Chief Judge, and SCHNACKENBERG and KNOCH, Circuit Judges.

KNOCH, Circuit Judge.

Petitioner asks this Court to determine that the Federal Communications Commission's "Original Ruling of August 18, 1959, and Reaffirmation Directive of March 24, 1960, are unlawful, erroneous and invalid and should be enjoined, set aside, annulled, and suspended."

The Federal Communications Commission had refused Petitioner's request for an

" 'Interpretive Opinion' strongly recommending that Columbia Broadcasting System, and specifically its chief administrative. officer, Frank Stanton, afford Petitioner (Lar Daly) free 30 minutes use of its facilities, equal to that utilized by Frank Stanton and other CBS per-

sonnel on July 26, 1959, to present to the American people a *genuine* explanation of the 'other side" of the controversial 'TV-Newscast' issue, wherein CBS will thus truly and actually 'fulfill its obligation' of providing a fair and balanced presentation of an important public issue of a controversial nature."

Petitioner argues that such a "recommendation" from the Commission, although not an "order", would not be disregarded by CBS because its individually owned and operated stations hold their licenses to broadcast subject to the Commission's continued approval.

The background to this cause may be briefly outlined as follows: In February, 1959, the Commission had ruled that Section 315(a) of the Communications Act of 1934, as amended, [47 U.S.C.A. § 315(a)] which required equal opportunities on radio and television for all legally qualified candidates for public office, did apply to appearances of such candidates in film clips used in regularly scheduled TV newscasts, and that petitioner was, therefore, entitled to such equal time.

A number of bills were introduced in Congress to amend the Act to exempt various kinds of news programs from the equal time requirement. The Senate debated and passed an amendment to exempt appearances by candidates on newscasts, news interviews, news documentaries, on-the-spot coverage of news events, and panel discussions. Petitioner takes the position that only the newscasts are involved here because the Commission's ruling respecting his right to equal time concerned newscasts. The legislation under discussion, however, dealt with all the above listed types of news programs, and the public interest, presumably, would be equally broad. The House subsequently debated and passed an amendment which was generally similar to that passed by the Senate. The report, dated August 27, 1959, [1959 U.S. Code Congressional & Administrative News, p. 2564,] of the Conference Committee appointed to reconcile differences between the two amendments, was adopt-

ed by both Houses, and, on September 14, 1959, the President approved an amendment adding the following language to Section 315(a):

"Appearance by a legally qualified candidate on any—

"(1) bona fide newscast,

"(2) bona fide news interview,

"(3) bona fide news documentary (if the appearance of the candidate is incidental to the presentation of the subject or subjects covered by the news documentary), or

"(4) on-the-spot coverage of bona fide news events (including but not limited to political conventions and activities incidental thereto), shall not be deemed to be use of a broadcasting station within the meaning of this subsection. Nothing in the foregoing sentence shall be construed as relieving broadcasters, in connection with the presentation of newscasts, news interviews, news documentaries, and on-the-spot coverage of news events, from the obligation imposed upon them under this chapter to operate in the public interest and to afford reasonable opportunity for the discussion of conflicting views on issues of public importance."

Previously the section had merely provided:

"If any licensee shall permit any person who is a legally qualified candidate for any public office to use a broadcasting station, he shall afford equal opportunities to all other such candidates for that office in the use of such broadcasting station: *Provided*, That such licensee shall have no power of censorship over the material broadcast under the provisions of this section. No obligation is imposed upon any licensee to allow the use of its station by any such candidate."

Petitioner contests the Commission's assertion that the question has been rendered moot by passage of this legislation, because Congress also provided as follows:

"The Congress declares its intention to reexamine from time to time the amendment to section 315(a) of the Communications Act of 1934 made by the first section of this Act, to ascertain whether such amendment has proved to be effective and practicable. [Pub. L. 86–274, § 2]"

Thus petitioner argues that the public demand consequent on his exposition of the TV Newscast issue would likely result in repeal of the amendment.

On July 26, 1959, after the Senate Committee had reported, but prior to floor debate on the Senate bill, CBS presented a program on the pending legislative proposals, including an editorial statement (of about five minutes duration) by CBS President, Dr. Frank Stanton, strongly favoring the legislation. In the course of the program, reference was made by CBS newscaster Howard K. Smith to the Commission's ruling on petitioner's claims to equal time in February, 1959. It does not appear from the record that any personal attack was made on the petitioner. The CBS announcer stated that CBS would provide time for presentation of opposing viewpoints. CBS did arrange to present Dr. Daniel M. Berman, Assistant Professor of Political Science, Washington College, Chestertown, Maryland; and Mr. Erich Hass, of the Socialist Labor Party. Several persons, in addition to petitioner, sought to appear in opposition to Dr. Stanton. Of these, CBS chose Dr. Timothy Costello, Assistant State Secretary of the Liberal Party of the State of New York. Dr. Berman, Mr. Hass and Dr. Costello appeared on a program on August 2, 1959. Petitioner argues that only Dr. Berman, who defended *in toto* the existing law, was a true opposition speaker, because Mr. Hass was willing to exempt film clips and tapes on regularly scheduled news broadcasts, and Dr. Costello was willing to exempt bona fide newscasts and on-the-spot news programs.

Meanwhile, on July 30, 1959, petitioner had filed with the Commission, a "petition for interpretive ruling" and, on August 5, 1959, a supplementary petition, alleging that, as a directly involved principal in the Commission's original ruling in February, 1959, petitioner was uniquely qualified to present the opposition position.

The Commission's views on editorializing by broadcast licensees comprehend devotion of a reasonable percentage of broadcasting time to discussion of public issues of interest so that

"\* \* \* the public has a reasonable opportunity to hear opposing positions on the public issues of interest and importance in the community." [13 F.C.C. Reports, pp. 1257–1258]

CBS filed opposition pleadings to both of petitioner's petitions. Petitioner filed an addendum and a reply.

August 18, 1959, the Commission's Acting Chairman wrote petitioner's attorney that the Commission had concluded that CBS had fulfilled its obligation to provide "a fair and balanced presentation of an important public issue of a controversial nature."

On September 21, 1959, petitioner filed a "petition for reconsideration and reversal of order." CBS filed its opposition, to which petitioner filed an answer. March 24, 1960, the Commission denied reconsideration and this petition for review followed.

The Commission's own interpretation of its rule is the ultimate criterion and is entitled to controlling weight, unless it is plainly erroneous or inconsistent with the rule. Bowles v. Seminole Rock & Sand Co., 1945, 325 U.S. 410, 414, 65 S.Ct. 1215, 89 L.Ed. 1700. Our study of this case shows no basis for holding the Commission's instant interpretation of its rules on editorializing to be plainly erroneous or inconsistent.

We have considered with care all the arguments advanced by petitioner, and find them without merit. The relief sought by petitioner is denied.