Ishmael **FLORY** et al., Petitioners,

v.

**FEDERAL COMMUNICATIONS COMMISSION and the United States of America, Respondents.**

No. 74–2010.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 12, 1975.

Decided Dec. 23, 1975.

Howard Eglit, Chicago, Ill., for petitioners.

Samuel R. Simon, Atty., Dept. of Justice, Washington, D. C., Jack David Smith, F. C. C., Washington, D. C., for respondents.

Before STEVENS, Associate Justice,* PELL, Circuit Judge, and PERRY, Senior District Judge.**

PELL, Circuit Judge.

This case is before the court on a petition for review of an order of the Federal Communications Commission entered October 16, 1974, denying the petitioner's application for review of the Commission's Broadcast Bureau's ruling of September 20, 1974, in which the Broadcast Bureau denied petitioners' request that an order issue requiring broadcasting facilities in Illinois to provide petitioner Flory with compensatory equal time equivalent to the time previously denied him but granted to other political candidates. An underlying question in the present case is when did Flory become a "legally qualified candidate" under § 315 of the Communications Act. 47 U.S.C. § 315. The FCC appears to phrase the issue on the basis that Flory was seeking equal time in September to compensate for earlier broadcasts of other candidates at a time he was not a legally qualified candidate. The petitioners on the other hand contend that at the time of earlier broadcasts and the turndown of his request for equal time he was indeed a legally qualified candidate. Jurisdiction is pursuant to 47 U.S.C. § 402(a), 28 U.S.C. §§ 2341–3, and 5 U.S.C. §§ 704–06. The United States, which is a party to this action pursuant to 28 U.S.C. § 2344, contends that the case is moot but otherwise supports the position of the Commission.

Flory was nominated by the state committee of the Communist Party of the United States to run in the 1974 election for United States Senator from

---

* Mr. Justice Stevens participated initially as Circuit Judge, and on and after December 19, 1975, as Circuit Justice.

** Senior District Judge Joseph Sam Perry of the United States District Court for the Northern District of Illinois is sitting by designation.

Illinois. Since the Communist Party had not polled at least five-percent of the vote in the preceding general election, a nominating petition containing 25,000 signatures was required to be filed for its candidate's name to appear on the ballot. Ill.Rev.Stat. Ch. 46, § 10–2. The petition had to be filed with the State Board of Elections not more than 99 days before the election and not less than 92 days before the election. The State Board then certifies the candidates who will appear on the ballot. Ill.Rev. Stat. Ch. 46, §§ 10–6, 10–14. A chronology of relevant events follows:

January 13, 1974—Flory nominated by the Communist Party.

March 1, 1974—Flory began collecting signatures for a nominating petition.

March 19, 1974—Republican and Democratic primaries held.

March 22, 1974—Flory announced his candidacy at a press conference.

May 18, 1974 through August 21, 1974— Debates between the Republican and Democratic candidates were broadcast by many stations throughout Illinois. Flory made requests for equal time to each station within seven days of each broadcast.

June 4, 1974—Ted Pearson, Flory's campaign manager, wrote the Broadcast Bureau of the Commission requesting an order directing a certain station to give Flory equal time. The letter recited that Flory held the qualifications for the office he was seeking, that he had been nominated by the Communist Party, that he had collected 13,000 of the 25,000 signatures his petition required, that he had distributed 20,000 pieces of campaign literature, and that the station had denied him equal time.

June 7, 1974—Pearson wrote a letter to the Broadcast Bureau similar to his letter of June 4, 1974, regarding other stations.

June 19, 1974—Pearson wrote the Broadcast Bureau restating the facts as in the earlier letters, summarizing the status of requests he had made to 20 stations, stating that when stations had denied his requests they had done so on the basis that Flory was not a legally qualified candidate, and stating:

"In the unforseen [sic] and unlikely event that the State Board of Elections does not certify Mr. Flory for the official election ballot, he most certainly will continue his campaign as a write-in candidate, as provided for in the Illinois Election Law."

He requested a ruling that Flory was a legally qualified candidate.

June 21, 1974—By letter, the Broadcast Bureau denied Pearson's requests of June 4 and June 7 relying on Reg. § 73.657(a) (defining legally qualified candidate) and Reg. § 73.657(f) (placing burden of proof on the petitioner).[1]

The Bureau noted that "eligibility to be voted for" was governed by state law and stated:

"[I]t appears from the information which you furnished to the Commission that Mr. Flory is attempting to qualify for a place on the ballot by filing a petition with signatures of registered voters, that he does not yet have the required number of signatures on his petition, and that the date for filing such petition has not yet arrived. Therefore you have not shown that he is qualified for a place on the ballot under the laws of Illinois."

July 11, 1974—Pearson wrote letters to various radio and television stations acknowledging the Bureau's ruling of June 21, stating that he would continue to demand equal time, and stating that he would be a write-in candidate if he was not certified.

September 11, 1974—Flory was certified by the State Board of Elections for a place on the ballot.

1. All regulations referenced in this opinion are in 47 C.F.R.

September 13, 1974—Pearson wrote letters to various stations referring to his earlier requests, noting that Flory had now been certified, and requesting equal time for all the time that had previously been allocated to his opponents (hereinafter referred to as "makeup time").

September 13, 1974—Pearson wrote a letter to the Broadcast Bureau requesting an order indicating that he was entitled to makeup time.

September 20, 1974—By letter the Broadcast Bureau denied Pearson's request of September 13, citing Reg. §§ 73.120(e), 73.657(e) (Time of Request rules), stating that to receive equal time a person must be a legally qualified candidate at the time of his opponents' appearance, and noting that Pearson had made no showing that Flory's opponents had appeared after Flory became a legally qualified candidate.

September 24, 1974—Pearson requested the Commission review the Broadcast Bureau's September 20 ruling.

October 16, 1974—The Commission denied Pearson's request without opinion pursuant to Reg. § 1.115(g) (denial of review without opinion).

November 5, 1974—The election was held.

## I. Mootness

The United States contends that, since the 1974 Senatorial election is over, no meaningful relief can be granted to Flory and that this case is therefore moot.

■ There is no doubt that this court is without power under Article III of the Constitution to decide questions which cannot affect the rights of litigants in cases before them. In such a case there is no case or controversy. *DeFunis v. Odegaard,* 416 U.S. 312, 316, 94 S.Ct. 1704, 1707, 40 L.Ed.2d 164 (1974). There is an important exception to the mootness doctrine that applies when an issue is "capable of repetition, yet evading review." In *Super Tire Engineering Co. v. McCorkle,* 416 U.S. 115, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974), the Supreme Court stated that the important ingredient in such cases is "governmental action directly affecting, and continuing to affect, the behavior of citizens in our society." *Id.* at 126, 94 S.Ct. at 1700. In *Moore v. Ogilvie,* 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969), the Supreme Court held that a challenge to the Illinois election process was not moot, even though the election was over, because the burden on the election system of Illinois law remained. In the case before us the burden of the Commission's interpretation of its regulations and Illinois law is at least as great. In *Paulsen v. FCC,* 491 F.2d 887 (9th Cir. 1974), the Ninth Circuit held that a challenge to a Commission determination regarding equal time was not moot because the election was over. *Id.* at 889 n. 2.

■ In *Super Tire, supra,* the Supreme Court stated that a claim for declaratory relief may not be moot when a claim for an injunctive remedy is. 416 U.S. at 121, 94 S.Ct. 1694. Similarly in this case, though we cannot grant Flory time to reply to his 1974 opponents, we can grant the petitioners the declaratory relief they seek in this petition for review. *DeFunis, supra,* must be distinguished. The Court gave two key reasons for its decision not to apply the capable-of-repetition exception decision: 1) the case was not capable of repetition with respect to the plaintiff because he would not attend law school a second time and 2) there was no reason to suppose that the issue presented would continue to evade review. 416 U.S. at 318–19, 94 S.Ct. 1704. Neither condition is present in the case at bar. Flory could very well run again; certainly it may be assumed that the petitioning political party will slate candidates facing the same problems experienced by Flory; and the time between an equal time request and an election is customarily brief particularly in relation to the slow process of pursuing effective review remedies. No particular exercise of the imagination is required to believe that

his frustraneous experience would be repeated.

## II. Validity and Effect of Commission's Regulations

■ The Broadcast Bureau relied on Reg. §§ 73.120(e) and 73.657(e) in its September 20 ruling. The regulations are identical except that the former applies to radio and the latter to television. They provide:

"(e) *Time of request.* A request for equal opportunities must be submitted to the licensee within 1 week of the day on which the first prior use, giving rise to the right to equal opportunities, occurred: *Provided, however,* That where a person was not a candidate at the time of such first prior use, he shall submit his request within 1 week of the first subsequent use after he has become a legally qualified candidate for the office in question."

As the Broadcast Bureau found, makeup time is not permitted for broadcasts of opponents made before a requesting party became a candidate. Flory challenges the validity of the regulations.

The regulations were issued pursuant to the authority granted by Congress under 47 U.S.C. § 315(g). The statute delegates to the Commission greater authority to make regulations implementing § 315 than the general rule-making authority under 47 U.S.C. § 303(r). *Kay v. FCC,* 143 U.S.App.D.C. 223, 443 F.2d 638, 643 (1970). Nevertheless, if a rule departs from the intendment of the act, it is invalid. *Kay, supra* at 645.

■ The relevant portion of § 315 provides:

"(a) If any licensee shall permit any person who is a legally qualified candidate for any public office to use a broadcasting station, he shall afford equal opportunities to all other such candidates for that office in the use of such broadcasting station: *Provided,* That such licensee shall have no power of censorship over the material broadcast under the provisions of this section. No obligation is imposed under this subsection upon any licensee to allow the use of its station by any such candidate. Appearance by a legally qualified candidate on any—

(1) bona fide newscast,

(2) bona fide news interview,

(3) bona fide news documentary (if the appearance of the candidate is incidental to the presentation of the subject or subjects covered by the news documentary), or

(4) on-the-spot coverage of bona fide news events (including but not limited to political conventions and activities incidental thereto),

shall not be deemed to be use of a broadcasting station within the meaning of this subsection. Nothing in the foregoing sentence shall be construed as relieving broadcasters, in connection with the presentation of newscasts, news interviews, news documentaries, and on-the-spot coverage of news events, from the obligation imposed upon them under this chapter to operate in the public interest and to afford reasonable opportunity for the discussion of conflicting views on issues of public importance."

Section 315 was originally part of the Radio Act of 1927. One of the original purposes of the section was to prevent discrimination between candidates. *Kay v. FCC, supra* at 643. *McCarthy v. FCC,* 129 U.S.App.D.C. 56, 390 F.2d 471. In *Paulsen v. FCC, supra,* the Ninth Circuit stated:

"Congress enacted § 315 to encourage full and unrestricted discussion of political issues by legally qualified candidates. . . . More specifically, the purpose of the section is to require a broadcaster to treat equally all candidates for a particular office or nomination once the broadcaster has made its facilities available to any one of the candidates." (Citations omitted.) 491 F.2d at 889.

Congress has long recognized that § 315 could have the effect of stifling political debate. Broadcasters may be willing to give time to certain candidates

but not be so willing if they must also give time to all of their opponents. The legislative history of the 1959 amendment exempting newscasts from § 315 shows that Congress was concerned that an FCC ruling to the contrary would cause broadcasters to restrict political coverage. Sen.Rep.No.562, 86th Cong. 1st Sess. (1959), U.S.Code Cong. and Admin.News, pp. 2564, 2571 *et seq.* (1959). Similar concern was shown in 1960 by a Joint Resolution which suspended the equal time provision of § 315 for the 1960 presidential campaign. P.L. 86–677, 74 Stat. 554 (1960). The Senate Report accompanying the resolution recognized the problems attendant with providing equal time to minor parties. Sen. Rep.No.1539, 86th Cong. 2d Sess. (1960), U.S.Cong. and Admin.News, p. 3252 (1960). This exemption would have been made permanent by the version of the Federal Election Campaign Act of 1971 reported by the Senate Committee on Commerce, Sen.Rep.No.92–96, 92d Cong. 1st Sess. (1971), U.S.Cong. and Admin. News, p. 1773 (1972); and it would have been extended to all candidates for federal elective office by amendments of the Senate Committee on Rules and Administration, Sen.Rep.No.92–229, 92d Cong. 1st Sess. (1971), U.S.Cong. and Admin.News, pp. 1821, 1824 (1972). The provision was deleted by the conference committee, Sen.Conf.Rep.No.92–580, 92d Cong. 1st Sess. (1971), U.S.Code Cong. and Admin.News, p. 1866 (1972), and was not enacted. P.L. 92–225, 86 Stat. 3.

■ In this review procedure, of course, it is not our province to concern ourselves with the practical difficulties that may be occasioned by an unlimited application of the equal time principle so as to sweep within its coverage political candidates who by any objective standard would have a *de minimis* participation in an election. The matter of the scope of the legislation is a policy question for the Congress.

Prior to amendment in 1970, the time limitation rule read:

"A request for equal opportunities must be submitted to the licensee within 1 week of the day on which the prior use occurred."

In its report on the amendment, the Commission stated that the purpose of the rule had been to permit orderly scheduling of political broadcasts. The fear was that a candidate might wait until shortly before an election to claim his "equal time" and then take up a substantial portion of a station's hours of operation in the final days before the election. If this were permitted it would in effect be making the station a participant, albeit an unwilling one, in a type of reverse discrimination between candidates since a deluge of time close to the election would certainly have an impact upon undecided voters. The Commission adopted the rule because it judged that stations would avoid political broadcasts rather than take that risk. The 1970 amendments were adopted because the earlier rule could be circumvented by candidates who did not make timely requests for equal time; they could request equal time to appearances made by other candidates who had made timely requests. The Columbia Broadcasting System urged the Commission to drop the proviso so that stations would know of their equal time requirements within seven days of an appearance without exception. The Commission rejected this suggestion because in its opinion the proviso was necessary to implement fairly and effectively the remedial purpose of the statute. 35 Fed.Reg. 7117 (1970).

The benefits the Commission sought in adopting the time limitation rule would be eliminated if a person could claim makeup time when he later became a candidate. The statute requires equal time be given to legally qualified candidates, not potential candidates. The Commission was acting within its statutory authority in enacting a rule which requires a person to be a candidate at the time of a use to claim equal time and in requiring candidates to claim their time within a week. The choice, as the Commission saw it, was placing some reasonable limitations on equal time rights or have stations curtail political

coverage. While the Commission's rule cut against the anti-discrimination purpose of the statute, it furthered the Congressional policy of encouraging political broadcasts.

■ Therefore the Broadcast Bureau was correct in its September 20 ruling in determining that Flory was not entitled to equal time if it was correct in its determination that Flory was not a legally qualified candidate before September 11.

Regs. § 73.120(a) (radio) and § 73.-657(a) (television) provide that a person is a legally qualified candidate if he 1) has publicly announced his candidacy, 2) meets the qualifications prescribed by applicable law to hold office, and 3) has qualified for a place on the ballot. A person who has not qualified for a place on the ballot may still be considered a legally qualified candidate if he meets requirements 1) and 2) above if he is eligible under applicable law to be voted for by write-in and he has either been nominated by a political party commonly regarded as such, or he makes a substantial showing that he is a bona fide candidate.[2]

■ It is the Commission's position on this petition for review that Flory was not a legally qualified candidate by virtue of his petition because the date for filing the petition under Illinois law had not yet arrived, and in any event Flory had not collected the requisite number of signatures. He was not a write-in candidate, according to the Commission, because he had not been campaigning as such—he had only indicated that he

would become one should he fail in his attempt to have his name placed on the ballot. On almost identical facts the Commission so ruled in *In re Complaint by Socialist Worker Party*, 39 FCC2d 89 (1972), *See also In re Complaint By Anthony L. Bruno*, 26 FCC2d 656 (1970). *But cf. Letter to Haley and Doty* (regarding campaign of Senator Knowland), 40 FCC 291 (1957). The Commission does not argue that Flory lacked any of the other qualifications under the rule.

We cannot agree with the argument of the Commission that the rule which provides qualification either by obtaining a place on the ballot or by becoming eligible by being a write-in candidate must be construed as setting up mutually exclusive routes. Rather obviously a candidate would prefer to have his name on the ballot. Write-in candidacies while occasionally successful are not conspicuously so. The fact that the candidate devotes himself initially to pursuit of the route which will be more favorable to his success at the polls does not preclude a firm commitment on his part that in the event he is not a ballot candidate he will continue his campaign on a write-in basis.

■ Flory argues that it is improper for the Commission to defer to state law in deciding who is a legally qualified candidate. Flory alleges that this works an injustice on him because Illinois law did not permit him to file his petition until 99 days before the election whereas the major parties held their primaries much earlier. We hold that it is proper for the Commission to defer to state law in determining who is a legally qualified candidate. Ultimately state law will de-

---

2. The regulations, in relevant part, read:

"(a) *Definitions.* A 'legally qualified candidate' means any person who has publicly announced that he is a candidate for nomination by a convention of a political party or for nomination or election in a primary, special, or general election, municipal, county, State or national, and who meets the qualifications prescribed by the applicable laws to hold the office for which he is a candidate so that he may be voted for by the electorate directly or by means of delegates or electors, and who:

(1) Has qualified for a place on the ballot, or

(2) Is eligible under the applicable law to be voted for by sticker, by writing in his name on the ballot, or other method, and (i) has been duly nominated by a political party which is commonly known and regarded as such, or (ii) makes substantial showing that he is a bona fide candidate for nomination or office, as the case may be."

termine who can be elected, and this is a reasonable interpretation of the statutory language.[3]

Flory also argues that he should have been given equal time because he was a bona fide write-in candidate. The Broadcast Bureau did not address this contention in its June 21 letter. Pearson first indicated in his June 19 letter that Flory would run as a write-in candidate should he not obtain a place on the ballot. This letter could easily have crossed the Bureau's letter in the mail; nevertheless, it was before the Bureau when it made the September ruling and before the Commission when it denied review.

■ The Commission's interpretation of its rules is entitled to controlling weight unless it is plainly erroneous or inconsistent with the rules, *Daly v. United States,* 286 F.2d 146, 149 (7th Cir. 1961), *cert. denied,* 368 U.S. 831, 82 S.Ct. 54, 7 L.Ed.2d 34. We hold that the Commission's interpretation of its rule in this case is plainly erroneous.

By fragmenting the rule the Commission misses its clear import. At the time of the debates between the Democratic and Republican candidates, Flory was a legally qualified candidate. The Commission does not dispute Flory's good faith in indicating that he would run as a write-in candidate should he not be certified for the ballot. Thus, at the time of the debates, at least those held after June 19, the only question was the manner of Flory's candidacy, not whether he was a candidate. In question was whether his name would be printed on the ballot or whether voters would have to write it in.

■ To qualify under the Commission rules as a write-in candidate, it is not essential that a candidate express doubt in his campaign speeches as to whether he will obtain ballot certification. It is sufficient that the candidate indicate to the stations from whom equal time is sought that he will continue to campaign as a write-in candidate regardless of the outcome of his petition efforts. We query whether it would be sufficient for a candidate merely to indicate that, if his petition effort failed, he would be agreeable to voters writing in his name but that is not the case here. Flory indicated he would continue an active campaign.

This court realizes that the Commission's interpretation might flow from a desire to avoid the necessity of determining a petitioner's sincerity in making such a statement. Nevertheless, the Commission's interpretation stretches the language too far. Whether the Commission could validly draw a regulation defining "legally qualified candidate" more narrowly is not before this court.

■ In our opinion, in accordance with the foregoing, the ruling of the Broadcast Bureau of September 20, 1974, is subject to challenge because it was bottomed on the assumption that Flory was not a legally qualified candidate at the time of the earlier requests. We are not prepared, however, to declare that Flory should have been accorded makeup time even though he was erroneously denied equal time at the time of his earlier requests. The petitioners should have sought review of the adverse earlier rulings when they were made and it is no answer to say that they did not do so because of a similar ruling by the Commission two years earlier. The scope of our declaratory relief is that a candidate who has not yet qualified for ballot position under state election laws is nevertheless entitled to equal time if he is otherwise eligible under the second prong of §§ 73–120(a) and 73.657(a) and commits himself to seeking election by the write-in method in the subsequent election. Since no injunctive relief is involved and inasmuch as the sole ruling which is challenged in the present proceeding did reach a correct result in de-

---

**3.** For a discussion of some of the pros and cons of following state law regarding who is a legally qualified candidate, see Singer, *The*

*FCC and Equal Time: Never-Neverland Revisited,* 27 Md.L.Rev. 221 (1967).

nying makeup time for erroneous previous rulings on which no review was sought, no purpose is served by vacating the challenged ruling. We deem it sufficient that we have set forth the guidelines applicable in the future.