**MISSISSIPPI POWER & LIGHT COMPANY, Plaintiff-Appellant**

v.

**UNITED GAS PIPE LINE COMPANY et al., Defendants-Appellees,**

**State of Mississippi, Plaintiff-Intervenor.**

No. 75–2316.

United States Court of Appeals, Fifth Circuit.

May 27, 1976.

Sherwood W. Wise, Joseph P. Wise, Jackson, Miss., Clayton L. Orn, Houston, Tex., for plaintiff-appellant.

W. DeVier Pierson, Peter J. Levin, Washington, D. C., E. L. Brunini, Jackson, Miss., for United Gas, etc.

Perry O. Barber, Jr., Alvin M. Owsley, Jr., Houston, Tex., Joe H. Daniel, Jackson, Miss., for Pennzoil Co.

Giles W. Bryant, Sp. Asst. Atty. Gen., Marshall G. Bennett, Jackson, Miss., for State of Mississippi.

Before THORNBERRY, COLEMAN and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

This appeal involves another facet of the problems created by the national energy shortage. Specifically, this litigation was commenced by Mississippi Power and Light Co. (MP&L) for breach of contract against one of the major natural gas pipeline companies, United Gas Pipeline Co. (United) and its former parent, Pennzoil Co. Alleging failure to supply the amounts of gas provided by the contract and basing its action solely on state law, MP&L brought a diversity action against United and Pennzoil in the United States District Court for the Southern District of Mississippi. After filing their answers, United and Pennzoil asserted the primary jurisdiction of the Federal Power Commission. The district

court granted a stay of all proceedings "to await the response of the Federal Power Commission as to its primary jurisdiction of this curtailment question . . . ."[1] MP&L appeals[2] the district court's order basically arguing that the Federal Power Commission does not have primary jurisdiction over any of the issues raised in this action. MP&L argues, moreover, that even if the FPC does have primary jurisdiction, the district court erred in not making its order more specific by stating which issues should be referred to the FPC. Finally, MP&L objects to the district court's stay of discovery. While we agree that the district court's order should be more specific, we hold that the court was correct in staying the proceedings in order that the Federal Power Commission may exercise primary jurisdiction in this matter.

I. THE CURTAILMENT CONTROVERSY:

In order to more clearly understand the issues presented by this complex litigation, a review of the natural gas shortage controversy and the litigation accompanying it is helpful.[3]

---

1. The district court order states in relevant parts:

It is the opinion of this Court that under the Natural Gas Act that the Federal Power Commission probably has jurisdiction of this curtailment controversy, and that the Court at this time should defer to its decision as to the authority of the Commission in this controversy, which is in the process of being handled by that agency; and while the agency's decision is not final and binding on the court, it must be sought at this time.*

The motion of the defendants to dismiss will be denied. The motion to stay proceedings here to await response of the Federal Power Commission as to its primary jurisdiction of this curtailment question will be granted. In the meantime, all other and further processes of this Court will be stayed to await the ultimate answer of the Commission as to this paramount and controlling question of law.

* Federal Power Commission v. Louisiana Power & Light Company, et al, 406 U.S. 621, 92 S.Ct. 1827, 1842, [32 L.Ed.2d 369] the Court among other things held: "In that circumstance, the District Court and the Court of Appeals were obliged to defer to the FPC for the initial determination of its jurisdic-

tion. See Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938). The need to protect the primary authority of an agency to determine its own jurisdiction 'is obviously greatest when the precise issue brought before a court is in the process of litigation through procedures originating in the [agency]. While the [agency's] decision is not the last word, it must assuredly be the first.'"

2. This court granted leave to appeal from an interlocutory order on May 28, 1975.

3. See, e. g., FPC v. Louisiana Power and Light Co., 406 U.S. 621, 92 S.Ct. 1827, 32 L.Ed.2d 369 (1972); Louisiana Power and Light Co. v. FPC, 526 F.2d 898 (5th Cir. 1976); Fort Pierce Utility Authority of City of Fort Pierce v. FPC, 526 F.2d 993 (5th Cir. 1976); Mississippi Public Service Commission v. FPC, 522 F.2d 1345 (5th Cir. 1975); State of Louisiana v. FPC, 503 F.2d 844 (5th Cir. 1974); Atlanta Gas and Light Co. v. FPC, 476 F.2d 142 (5th Cir. 1973); International Paper Co. v. FPC, 476 F.2d 121 (5th Cir. 1973).

By the spring of 1971, several pipeline companies, including United, had notified the Federal Power Commission that their supplies were inadequate to meet commitments to their customers. United, as well as other pipeline companies, proposed to meet this shortage situation by instituting curtailment plans that would allocate the available gas among their customers. Most of these plans had been adopted by the pipelines during a temporary shortage created by the Korean war. Needless to say, these plans were often unsuitable as a method of curtailing supplies during the present period of continual and severe shortage. The FPC, in Order No. 431,[4] Statement of General Policy, ordered the pipelines to institute all necessary steps to alleviate the shortage and to submit new tariffs which would incorporate revised curtailment plans. Under United's temporary curtailment plan filed pursuant to Order 431, MP&L, a utility who used natural gas as a fuel to generate electricity, was placed in the category to be curtailed first.[5] Therefore, MP&L has been receiving substantially less natural gas than it had before curtailment.

The necessity for curtailment gave rise to two distinct problems. The first question was how much of the available supply of natural gas each of the pipeline's customers would receive. The second question was who would bear the economic consequences of the shortage. Those customers who were curtailed in whole or in part would have to seek alternative sources of energy which would generally be available at significantly increased cost, and somehow this additional cost would have to be allocated. The various parties, therefore, sought to insure that others bore the financial burden of curtailment.

United feared liability on two separate theories. First, a curtailed customer might bring a general breach of contract action alleging failure to deliver the amounts of gas stated in the contract. Second, a customer could bring an action under a specific clause—the substitute fuel clause—contained in many of United's contracts, including its agreement with MP&L. That provision arguably requires United to compensate a customer for the additional cost of obtaining other types of fuel to meet the customer's energy needs. While United contended that the substitute fuel clause did not apply in a general curtailment situation and if it did the language of the clause limited liability to the amount of fuel purchased by the customer for only a few days, should these contentions fail, United faced a possibility of over a billion dollars in liability.

Even before suit was instituted, United sought by means of proceedings before the Federal Power Commission to insure that it would not bear the financial cost of curtailment. In 1970, United sought a declaratory order from the Commission which would hold that § 12.1 of its tariff on file with the Commission immunized United from liability.[6] That section provided that curtailment could be instituted "without liability." United also sought to file with the Commission proposed § 12.3 of the tariff that stated in relevant part,

> . . . nor shall seller (United) be obligated to pay or credit such customers any sums with respect to substitute fuels burned by such customers during such a period of proration or interruption.

The Commission rejected United's proposal in Opinion 606[7] and stated that,

4. 49 FPC 85 (1973).

5. Originally, MP&L was given a preference over other customers. The Commission, however, ordered that utilities like MP&L be placed in the lowest priority for gas supplies. While this court has remanded to the Commission for further evidence on this point, the court has allowed United to operate through the present heating season under a plan that denied MP&L

any priority. *See Louisiana Power and Light Co. v. FPC*, 526 F.2d 898 (5th Cir. 1976).

6. *See* United Gas Pipe Line Company, FPC Docket No. RP71–29. MP&L has contended from the beginning that no tariff provision can affect its agreements with United.

7. 46 FPC 786 (1971). *See also*, Opinion Nos. 606–A, 46 FPC 1290 (1971).

implementation of the curtailment plan itself, pursuant to our procedures, would be an absolute defense for United against all claim for specific performance, damages, or other requests for relief under these contracts affected by curtailment that may be initiated in the courts.

In *International Paper Co. v. Federal Power Commission*, 476 F.2d 121 (5th Cir. 1973), however, this court vacated that statement in Opinion 606 as "mere dicta" totally lacking evidentiary support. *Id.* at p. 125.

Subsequently, United resubmitted § 12.3, but in Opinion 647–A[8] the Commission again rejected United's proposed exculpatory language. This time, the Commission reasoned that United would only be vulnerable under a general breach of contract theory if the curtailment had resulted from its own negligence, bad faith, or other wrongful conduct. The Commission had found, however, that United had not acted "improvidently" and that it would not therefore be held liable for damages. Next, the Commission stated that substitute fuel clauses required United at most to reimburse its customers the extra costs of substitute fuels for only "a maximum of seven days." Then, the Commission opined that if a court found that the clause created "open ended" liability, the FPC would be "compelled to find such clauses are unduly preferential." The Commission reasoned that the prospect of open ended liability might cause United to disobey FPC orders and in some way favor customers who had substitute fuel clauses in their contracts.

Once again, in *State of Louisiana v. Federal Power Commission*, 503 F.2d 844 (5th Cir. 1974), this court vacated the FPC's findings. The court pointed out that the proper determination of whether United was liable for breach of contract absent an exculpatory tariff such as § 12.3 would be decided by a court in the contract actions. Then, the court found the FPC's interpreta-

tion of the substitute fuel clauses to be an "assertion (which) cannot stand without supporting reasons." *Id.* at 868. Furthermore, the court instructed the FPC not to assume that United was not liable for breach of contract but to evaluate the proposed § 12.3 in light of possible contract liability. The court stated at page 867:

> We think the Commission should have determined what would happen with the proposed change in effect. Can a tariff provision remove general contractual liability? If the provision would remove liability, would the unavailability of damages subject United's curtailed customers to 'any undue prejudice or disadvantage?' In short, since the Commission cannot adjudicate contract liability, it should evaluate section 12.3 on the assumption that United faces possible liability—not on the assumption it is immune.

In *State of Louisiana*, the court also reversed the Commission's decision on various other aspects of United's curtailment plan. On remand, the FPC established procedures to meet the objections of this court.[9] Part of these procedures, delineated Phase III by the Commission, were specifically designed to determine the advisability of adopting § 12.3 as a part of United's tariff. At present, hearings are being conducted as a part of these Phase III proceedings.

United also filed with the Commission on March 3, 1975, a petition requesting a declaratory order. Under United's request, the Commission would determine, *inter alia*, (1) whether the availability of damages to some of United's curtailed customers would create an undue preference in violation of the Natural Gas Act, (2) whether § 12.1 of United's tariff would preclude liability to certain customers such as MP&L and (3) whether the shortage was caused by the negligence or willful misconduct of United. The Commission has not clearly articulated

---

**8.** 49 FPC 1211 (1973). *See also,* 49 FPC 179 (1973).

**9.** Order on Remand Denying Motion for Immediate Modification of Curtailment Plan, United

Gas Pipe Line Company, FPC Docket Nos. RP71–29 and RP71–120, March 7, 1975 on rehearing May 2, 1975.

what, if any, its action will be on United's petition.[10]

On August 5, 1974, Mississippi Public Service Commission (MPSC) filed a petition for extraordinary relief before the Commission on behalf of MP&L and other Mississippi utilities. In this petition, the utilities sought compensation from those customers of United who received a higher preference for gas. Under their proposal, a customer who received full gas supplies would have to make payments to customers of United who had been curtailed. In this way, the utilities sought to allocate among all the customers of United the burden of curtailment. The Commission denied MPSC's petition on the ground that it was without jurisdiction to require such compensation. This court in *Mississippi Public Service Commission v. Federal Power Commission*, 522 F.2d 1345 (5th Cir. 1975), rejected the Commission's jurisdictional argument and remanded for determination of whether compensation payments should be a condition for receipt of a higher priority in a gas curtailment plan.

On August 30, 1974, MP&L brought this present action against United and its former parent Pennzoil. As has been outlined above, MP&L sought damages of approximately $160,000,000 from United for breach of contract. The district court stayed these proceedings pending the exercise of primary jurisdiction by the Federal Power Commission, and MP&L objects to that stay.

## II. PRIMARY JURISDICTION:

■ The doctrine of primary jurisdiction has evolved as a means of reconciling the functions of administrative agencies with the judicial function of the courts.[11] When legal disputes develop that directly affect an industry subject to regulation, the need arises to integrate the regulatory agency into the judicial decision making process. One method to accomplish integration is to have the agency pass in the first instance on those issues that are within its competence. In short, the agency should have the first word. *Marine Engineers Beneficial Assn. v. Interlake Steamship Co.*, 370 U.S. 173, 185, 82 S.Ct. 1237, 1243, 8 L.Ed.2d 418, 426 (1962).

Reference to administrative agencies was first established in those cases where Congress by statutory provision had allocated to the agency the power to conclusively decide the contested issue. For example, the Interstate Commerce Commission is the exclusive agency for determining the reasonableness of rates; therefore, a court must defer to that agency when a party challenges a rate in a legal proceeding. *Texas and P. R. Co. v. Abilene Cotton Oil Co.*, 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553 (1907). Under this methodology, before invoking the doctrine of primary jurisdiction it was imperative that the court determine whether the agency's decision would be definitive. There was the implication that if the agency's conclusion did not finally resolve the issue, reference would not be warranted. *Public Utilities Commission v. United States*, 355 U.S. 534, 539, 78 S.Ct. 446, 450, 2 L.Ed.2d 470, 475 (1958); *Montana-Dakota Utilities Co. v. Northwestern Public Service Co.*, 341 U.S. 246, 254, 71 S.Ct. 692, 696, 95 L.Ed. 912, 920 (1951).

10. *See* Order partially granting petition for declaratory order and motion to consolidate, United Gas Pipe Line Company, (Phase III) FPC Docket Nos. RP71–29, RP75–71, RP75–69, August 20, 1975; Supplemental Order modifying order issued December 9, 1975 and referring ruling to Commission for review, United Gas Pipe Line Company, (Phase III) FPC Docket Nos. RP71–29, RP75–69 and RP75–71, December 16, 1975.

11. *See* generally, Travis, Primary Jurisdiction, A General Theory and Its Application to the Securities Exchange Act, 63 Calif.L.Rev. 926 (1975); Jaffe, Primary Jurisdiction, 77 Harv.L.Rev. 1037 (1964); Handler, Regulation v. Competition, 44 U.Conn.L.Rev. 191 (1975); King, The "Arguably Lawful" Test of Primary Jurisdiction in Antitrust Litigation Involving Regulated Industries, 40 Tenn.L.Rev. 617 (1973); Robinson, Antitrust Developments: 1973, 74 Colum.L.Rev. 163 (1974); Note, Primary Jurisdiction in Antitrust Cases. Three recent decisions, 42 U.Cinn.L.Rev. 725 (1973).

Applying the doctrine of primary jurisdiction only in those situations where the issue was solely within the agency's competence created difficulties in integrating the administrative agency's position with the judicial process. First, the court would have to determine, often on the barest of pleadings and in the most complicated litigation, to which decision making body—the court or the agency—Congress had allocated the resolution of the issue. Administrative jurisdiction, however, is difficult to determine without some factual underpinnings and often depends upon the particular context in which the issue arises. *Cf. Federal Power Commission v. Louisiana Power and Light*, 406 U.S. 621, 647, 92 S.Ct. 1827, 1841, 32 L.Ed.2d 369, 388 (1972). This difficulty in determining jurisdiction is particularly acute where the agency, such as the Federal Power Commission, has only a limited grant of jurisdiction from Congress. Compare *Federal Power Commission v. Panhandle Eastern Pipeline Co.*, 337 U.S. 498, 69 S.Ct. 1251, 93 L.Ed. 1499 (1949), with *United Gas Improvement Co. v. Continental Oil Co.*, 381 U.S. 392, 85 S.Ct. 1517, 14 L.Ed.2d 466 (1965). Secondly, such limited invocation of the doctrine of primary jurisdiction would emasculate the agency's ability to participate in those cases where a final decision was left to the courts even though the litigation had a profound impact on the regulatory process. Therefore, the courts have often required the prior resort to an administrative agency before allowing the litigation to proceed.[12]

Recently, the Supreme Court has required reference to the relevant regulatory agency without even deciding whether that agency has jurisdiction to finally determine the basic dispute in the case. In *Ricci v. Chicago Mercantile Exchange*, 409 U.S. 289, 93 S.Ct. 573, 34 L.Ed.2d 525 (1973), the Court dealt with an antitrust complaint attacking a commodity exchange's decision to transfer a membership of the exchange. The defendant had sought reference to the Commodity Exchange Commission, but there was considerable dispute over whether the Commission had jurisdiction to resolve the contested issues. The Supreme Court stated at page 304, 93 S.Ct. at page 582, 34 L.Ed.2d at page 537:

> We need not finally decide the jurisdictional issue for present purposes, but there is sufficient statutory support for administrative authority in this area that the agency should at least be requested to institute proceedings.

The Court then went on to state that it was "very likely that a prior agency adjudication of this dispute will be *a material aid* in ultimately deciding" the issue. *Id.* at 305, 93 S.Ct. at 582, 34 L.Ed.2d at 537.

Even before *Ricci*, this court had mandated referral to the Federal Communication Commission even though that agency decision might not have been "the end to the matter." *Carter v. American Tel. & Tel. Co.*, 365 F.2d 486, 499 (5th Cir. 1966). In *Carter*, we required that the doctrine of primary jurisdiction be invoked where there was only a "strong possibility" that the FCC decision would resolve the dispute. *Id.* at 497. *See also, Southern Railway Co. v. Combs*, 484 F.2d 145 (6th Cir. 1973). Also, this court had referred to the very agency involved in this litigation, the Federal Power Commission, the issue of whether a particular dispute was encompassed by that agency's jurisdictional grant. *J. M. Huber Corp. v. Denman*, 367 F.2d 104 (5th Cir. 1966); *see also, Agricultural Trans. Assoc. of Texas v. King*, 349 F.2d 873 (5th Cir. 1965); *Louisville and Nashville Railroad v. Knox Home*, 343 F.2d 887 (5th Cir. 1965). *See also, Monsanto Co. v. Federal Power Commission*, 146 U.S.App.D.C. 396, 463 F.2d 799 (1972).

■ A court's discretion to seek the administrative agency's input in those cases where the agency will be a "material aid" to the ultimate decision is not unlimited. In this period of expanding federal regulation, there are few disputes in which reference to some federal or state agency might not conceivably be of material aid to the

---

12. Robinson, Antitrust Developments: 1973, 74 Colum.L.Rev. 163, 174–179 (1974).

court.[13] As the Supreme Court stated in *United States v. Western Pacific Railroad Co.*, 352 U.S. 49, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956),

> No fixed formula exists for applying the doctrine of primary jurisdiction. In every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation.

*See also, Watts v. Missouri-Kansas-Texas Railroad Co.*, 383 F.2d 571, 581 (5th Cir. 1967); *CAB v. Modern Air Transp. Inc.*, 179 F.2d 622, 625 (2d Cir. 1950).

▮▮▮ The courts should be reluctant to invoke the doctrine of primary jurisdiction, which often, but not always, results in added expense and delay to the litigants where the nature of the action deems the application of the doctrine inappropriate. While one cannot easily reconcile all the cases wherein referral was denied, there are a few general situations in which referral is often unwarranted. If, under no conceivable set of facts, the agency could immunize what would be a clear violation of federal law, referral would be inappropriate. *Federal Maritime Board v. Isbrandtsen Co.*, 356 U.S. 481, 78 S.Ct. 851, 2 L.Ed.2d 926 (1958). In implementing the national policy of free competition as embodied in the antitrust laws, the court normally should not defer where the issue is not dissimilar from that encountered in non-regulated industries. *See United States v. Philadelphia National Bank*, 374 U.S. 321, 339, 83 S.Ct. 1715, 1728, 10 L.Ed.2d 915, 930 (1963); *California v. Federal Power Commission*, 369 U.S. 482, 82 S.Ct. 901, 8 L.Ed.2d 54 (1962). Deference is particularly inappropriate where the litigation deals with a single event which requires no continuing supervision by the regulatory agency. *Cf. Federal Maritime Commission v. Seatrain Lines, Inc.*, 411 U.S. 726, 93 S.Ct. 1773, 36 L.Ed.2d 620 (1973). The nature of relief sought, moreover, is also a relevant consideration in deciding whether to refer to the agency. The court

in instituting injunctive relief may be able to provide adequate flexibility to coordinate its decision with subsequent regulatory action. *Otter Tail Power Co. v. United States*, 410 U.S. 366, 93 S.Ct. 1022, 35 L.Ed.2d 359 (1973). In addition, in those cases where Congress has determined by statute that the courts should decide the issue in the first instance, primary jurisdiction should not be invoked. *Mercury Motor Express v. Brinke*, 475 F.2d 1086 (5th Cir. 1973). Likewise, when the agency's position is sufficiently clear or nontechnical or when the issue is peripheral to the main litigation, courts should be very reluctant to refer. *Great Northern Railway Co. v. Merchants Elevator Co.*, 259 U.S. 285, 42 S.Ct. 477, 66 L.Ed. 941 (1922); *Shew v. Southland Co.*, 370 F.2d 376 (5th Cir. 1966); *Strickland Transportation Co. v. United States*, 334 F.2d 172 (5th Cir. 1964). Finally, the court must always balance the benefits of seeking the agency's aid with the need to resolve disputes fairly yet as expeditiously as possible. *Cf. Local 189, Amalgamated Meat Cutters v. Jewel Tea Co.*, 381 U.S. 676, 686, 85 S.Ct. 1596, 1600, 14 L.Ed.2d 640, 647 (1965); *Foremost International Tours v. Qantas Airways Ltd.*, 525 F.2d 281 (9th Cir. 1975), petition for cert. filed, 44 L.W. 3533 (March 23, 1976).

### III. THE PRESENT LITIGATION:

▮▮▮ In this litigation, referral is particularly appropriate. While the Federal Power Commission's jurisdiction is somewhat limited, the Natural Gas Act, as interpreted by the courts, has provided the Commission with the statutory basis for pervasive regulation of the curtailment question. *See Louisiana Power and Light v. Federal Power Commission, supra; see also Fort Pierce Utility Authority v. Federal Power Commission*, 526 F.2d 993 (5th Cir. 1976); *Consolidated Edison Co. v. Federal Power Commission*, 168 U.S.App.D.C. 92, 512 F.2d 1332, modified 171 U.S.App.D.C. 55, 518 F.2d 448 (1975). The Commission is presently involved in resolving issues which

---

**13.** King, The "Arguably Lawful" Test of Primary Jurisdiction in Antitrust Litigation Involving Regulated Industries, 40 Tenn.L.Rev. 617, 657 (1974).

have a direct impact on civil litigation involving curtailment plans. The advisability of invoking primary jurisdiction is greatest when the issue is already before the agency. *Louisiana Power and Light v. Federal Power Commission, supra,* at 910; *Industrial Communications System Inc. v. Pacific Tel. & Tel. Co.,* 505 F.2d 152, 157 (9th Cir. 1974); *MCI Communications Corp. v. American Tel. & Tel. Co.,* 496 F.2d 214, 223–24 (3rd Cir. 1974). The Commission, moreover, is reviewing in some detail the facts and circumstances that resulted in the present shortage in order to determine what is a fair, equitable, permanent curtailment plan. Indeed, this court has already stated in a similar action that referral to the FPC is preferred. *Atlanta Gas and Light Co. v. Federal Power Commission,* 476 F.2d 142, 151 (5th Cir. 1973).

■■■ There also can be no doubt that the Commission's informed opinion will be of material aid to the district court in the resolution of the damage action. In five specific components of the dispute the Commission's assistance would be significant. First, the Commission can determine in detail the facts and circumstances that resulted in the severe shortage United is experiencing. Development of the factual context by those expert in the area, is an established basis for primary jurisdiction. *Far East Conference v. United States,* 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576 (1952). Second, the Commission could determine whether to accept an exculpatory tariff from United such as proposed § 12.3. In reaching this decision, the Commission could also determine whether a tariff provision can immunize United from liability and particularly whether such a tariff would provide United with a defense in this suit by MP&L. Certainly, the interpretation and implementation of a tariff is a question properly passed upon in the first instance by the Commission, and reference by a court to a regulatory agency may not even be discretionary on such an issue. *Interstate Commerce Commission v. Atlantic C.L.R. Co.,* 383 U.S. 576, 600–601, 86 S.Ct.

1000, 1014–1015, 16 L.Ed.2d 109, 126 (1966); *United States v. Western P. R. Co.,* 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956); *Watts v. Missouri-Kansas-Texas Railroad Co., supra.* Third, the Commission's interpretation of the United-MP&L contract provisions that might possibly limit damages would aid a court in the ultimate decision. *See, J. M. Huber Co. v. Denman, supra.* Fourth, the Commission is presently reviewing a request by MP&L for compensation from the customers of United who receive higher priorities. In that proceeding, MP&L seeks payment for some of the very damages which it claims in this damage action. Finally, the Commission could clearly articulate whether in its view the presence or absence of damages significantly affects the allocation decision. While the Commission has at times stated that it believes such an impact is evident, *see, State of Louisiana v. Federal Power Commission, supra,* referral of this damage action would give the Commission an opportunity to articulate its rationale and support it with relevant findings of fact. In short, there are several aspects of the damage action that the Commission decisions may either resolve for or, at a minimum, be of material assistance to the trial court. *See, Ricci v. Chicago Mercantile Exchange, supra; Carter v. American Tel. & Tel. Co., supra.*

None of the factors mitigating the applicability of the primary jurisdiction doctrine are present. First, the curtailment question is extremely complicated, affecting energy policy throughout the entire nation. For a court to attempt to determine whether it or the FPC has final authority over all aspects of the damage action on the record, before the district court would be singularly unwise. Second, here there are circumstances such as the addition of § 12.3 to United's tariff that might immunize United from liability. Third, no federal policy or statute entrusts the decision to courts in the first instance. Certainly, these curtailment damage actions are vastly dissimilar to the bulk of federal diversity contract litigation. Finally, the FPC has stated that damage actions could disrupt its resolution of the

curtailment problem—a problem which all parties agree is likely to be a continual difficulty for quite some time. In balance, we believe that the Commission's assistance will be of "sufficient aid to the court that the action should not go forward without making reasonable efforts" to obtain the FPC's assistance. *Chicago Mercantile Exchange v. Deaktor,* 414 U.S. 113, 115, 94 S.Ct. 466, 467, 38 L.Ed.2d 344, 347 (1973).

MP&L's reliance on our opinions in *International Paper, supra,* and *State of Louisiana, supra,* for the proposition that no issue in this case is subject to the primary jurisdiction of the FPC is misplaced. There the court dealt with the Commission's refusal to institute United's proposed exculpatory tariff. The Commission, acting upon an inadequate evidentiary basis, had concluded that such a tariff was unnecessary because United was immune from damages. We vacated such statements by the Commission because they lacked evidentiary support. We also stated that the contractual liability of United, absent an exculpatory tariff, should be finally determined in a court of law. Nothing we said in either case, however, implied that although a court will make the final determination, that court could not and should not seek the Commission's assistance pursuant to the doctrine of primary jurisdiction before resolving the litigation.

■ While we agree that the district court properly stayed proceedings pending the decision of the Federal Power Commission, we believe the district court should have been more precise in its order. The district court simply stayed all proceedings pending future action by the Federal Power Commission. In its present posture, the United proceedings before the Commission could terminate with several of the issues that might be relevant to the damage action still unresolved. For example, the Commission might determine that an exculpatory provision such as proposed § 12.3 could not immunize United from liability

and terminate all proceedings concerning the damage question. In such a situation, it would be even more important for the Commission to state its interpretation of United's contract provisions. In addition, the Commission is presently resolving the issues concerning the facts underlying United's shortage in proceedings intended to develop a permanent curtailment plan. We believe it would be beneficial for the Commission to address the issue of contract liability in a proceeding where the damage action was clearly before it. Reference by the district court of an order to the Commission which specifically outlines those issues in which the courts seeks assistance would provide the Commission with a context to focus on the damage action. Part of the difficulty that has resulted in the United litigation has been the tendency of the Commission, in almost an aside, to resolve the question of United contract liability while its focus has been primarily on developing a curtailment plan. On remand, the district court should prepare an order which outlines with some specificity both the proceedings before the Commission that should be concluded before the damage litigation should continue and the issues upon which the Commission's opinion is sought.[14] *See, International Ass'n, Etc. v. United Contractors, Etc.,* 483 F.2d 384, 400–401, 404, modified 494 F.2d 1353 (3rd Cir. 1974).

■ In its final contention, MP&L argues that the district court erred in not allowing discovery to continue and proceeding to trial on those issues which were not referred to the Commission. While the district court has an affirmative obligation to resolve those issues in the litigation which, if they are sufficiently distinct, are not referred to the Commission, *Louisville and Nashville Railroad Co. v. Knox Homes Corp., supra* at 895 (5th Cir. 1965), in a suit such as this one where referral encompasses the major part of the litigation the district court has discretion to stay all

---

**14.** By requiring the district court to prepare an order in which certain issues are referred to the FPC, we do not intend to unduly restrict that

agency's ability to assist the district court. The agency is free to make all findings that it be-

# 422

proceedings.[15] *Chronicle Publishing Co. v. NBC*, 294 F.2d 744, 749 (9th Cir. 1961).

Finally, we add a note of caution. We have been careful not to articulate the exact effect of the findings of the Commission upon the subsequent litigation. The district court stated in its order that the Commission's decision would not be binding upon the court. We believe that it is singularly inappropriate to determine at this point in this complex litigation what the effect of the Commission's decisions will be before the nature and extent of the Commission's action is ascertainable. While, as we have stated before, the court will finally determine United's liability in the damage action, we express no opinion as to the degree to which the trial court in reaching its decision will be bound by prior agency determination. Once the Commission decides the issues referred to it by the district court, there will be adequate time to determine the proper procedures for reviewing such findings and their effect on the subsequent litigation. *Cf. Carter v. American Tel. & Tel. Co., supra* at 499–500.

In conclusion, we believe the district court acted properly in staying the procedures and in referring the case to the Federal Power Commission so that that agency might exercise primary jurisdiction. We also believe that the district court should have been more precise in its order staying the litigation. We therefore remand to the district court for the limited purpose of modifying its order.

Remanded with directions.

lieves will aid the prompt resolution of the dispute.

**15.** According to United's brief, discovery is proceeding in various other similar actions brought against United in federal and state

courts. Nothing we say here is meant to deny the district court the power to allow discovery if after preparing a new order the court believes that allowing discovery will aid in the resolution of the dispute.