DONALD M. MIDDLEBROOKS, UNITED STATES DISTRICT JUDGE
THIS CAUSE comes before the Court upon Defendant Kohl's Department *1132 Stores, Inc.'s ("Defendant") Motion to Dismiss ("Motion"), filed on December 1, 2017. (DE 34). Plaintiff Dennis Haynes ("Plaintiff") filed his Response on December 15, 2017 (DE 42), to which Defendant replied on December 20, 2017 (DE 43). For reasons stated below, Defendant's Motion is denied.
I. BACKGROUND
On May 30, 2017, Plaintiff filed a Complaint against Defendant alleging a violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq. (DE 1). On October 25, 2017, the Court granted in part Defendant's Motion to Dismiss Plaintiff's Complaint, finding that Plaintiff failed to state a claim "because he did not plead sufficient facts to demonstrate that he was denied access to the benefits of Defendant's physical stores due to the inaccessibility of Defendant's website." (DE 25 (hereinafter, "Dismissal Order")). Consistent with the Court's Dismissal Order, Plaintiff timely filed an Amended Complaint on November 8, 2017, which re-alleged the same cause of action and sought the same relief, but added factual allegations to support his claim. (DE 27 ("Compl.")).
In the Amended Complaint, Plaintiff alleges that he "is blind and therefore unable to engage in and enjoy the major life activity of seeing," constituting a disability as defined by the ADA. (Compl. ¶ 1). As a result, "Plaintiff is unable to read computer materials and/or access and comprehend internet website information without software specifically designed for the visually impaired ... [s]pecifically, ... JAWS Screen Reader software." (Compl. ¶ 2). Plaintiff alleges that Defendant "owns, operates, or leases a chain of stores throughout the United States, the State of Florida, and Broward County," which are places of public accommodation as defined by the ADA. (Compl. ¶ 4). Plaintiff alleges that Defendant's website, www.kohls.com, is required by law to be in compliance with the ADA, but that it is not. (Compl. ¶¶ 5, 9).
Plaintiff alleges that he "attempted to access and/or utilize Defendant's website, but was unable to, and continues to be unable to, enjoy full and equal access to the website and/or understand the content therein because numerous portions of the website do not interface with and are not readable by SRS." (Compl. ¶ 10). Plaintiff avers that since "Defendant's website contains graphics, links, headings, forms and text with information that is not fully readable and/or compatible with SRS," Plaintiff was prevented "from enjoying the following benefits of Kohl's physical stores: access to the location of the physical stores, including which physical store is nearest or more convenient to the Plaintiff; the ability to obtain discount coupons to be applied to purchases; the ability to obtain information on items are [sic] being offered for sale at a reduced or clearance price; the opportunity to place an order through the website for free pickup at a designated store of Plaintiff's choice." (Id. ). Plaintiff alleges that he has suffered and will continue to suffer injuries as long as Defendant's website remains non-compliant with the ADA and inaccessible to him as an individual with blindness. (Compl. ¶¶ 12-16). Plaintiff seeks declaratory and injunctive relief, and an award of attorney's fees and costs. (Compl. at 11-12).
Defendant filed a motion to dismiss claiming: (1) its website is not required to comply with the ADA as a matter of law, and therefore Plaintiff's Complaint fails to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) ; (2) even if Plaintiff states a claim, that requiring Defendant to make its website comply with the ADA would violate Defendant's due process rights; and (3) that the Complaint should be dismissed *1133 under the primary jurisdiction doctrine. (DE 34).
II. LEGAL STANDARD
A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint. See Fed. R. Civ. P. 12(b)(6). In assessing the legal sufficiency of a complaint's allegations, the Court is bound to apply the pleading standard articulated in Bell Atl. Corp. v. Twombly , 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Courts must follow a two-pronged approach in evaluating motions to dismiss by "1) eliminat[ing] any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assum[ing] their veracity and then determin[ing] whether they plausibly give rise to an entitlement to relief.' " Am. Dental Ass'n v. Cigna Corp. , 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting Iqbal , 556 U.S. at 679, 129 S.Ct. 1937 ). A court must "accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." Almanza v. United Airlines, Inc. , 851 F.3d 1060, 1066 (11th Cir. 2017). However, pleadings that "are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal , 556 U.S. at 678, 129 S.Ct. 1937. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Almanza , 851 F.3d at 1066 (quoting Iqbal , 556 U.S. at 678, 129 S.Ct. 1937 ) (internal quotations omitted).
III. DISCUSSION
A. Title III ADA Claim
Title III of the ADA provides that:
No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.
42 U.S.C. § 12182(a). "A plaintiff alleging Title III ADA discrimination must initially prove that (1) he is a disabled individual; (2) the defendant[ ] own[s], lease[s], or operate[s] a place of public accommodation; and (3) the defendant[ ] discriminated against the plaintiff within the meaning of the ADA." Norkunas v. Seahorse NB, LLC , 444 F. App'x 412, 416 (11th Cir. 2011) (citing 42 U.S.C. § 12182(a) ).
Defendant argues that Plaintiff's claim should be dismissed because (1) the ADA does not cover website accessibility as a matter of law since websites are not considered places of public accommodation (DE 34 at 3-5), (2) the website cannot be considered an "inaccessible component" of Defendant's stores (id. at 6-7), and (3) Plaintiff does not allege sufficient facts to demonstrate that he was denied access to the "goods, services, facilities, privileges, advantages, or accommodations" (collectively, the "benefits")[1] offered at Kohl's physical stores when he was unable to access the website because of his disability (id. at 7-10).
The Court will not rehash all of the extensive analysis from its Dismissal Order about the current circuit split and how plaintiffs can state ADA discrimination *1134 claims based on allegedly inaccessible websites. (DE 25 at 5-10).
In the Dismissal Order, this Court found that websites are not themselves "public accommodations" under Title III of the ADA because public accommodations are necessarily concrete, physical spaces. (DE 25 at 5-9); see generally 42 U.S.C. § 12181(7) ; Rendon v. Valleycrest Prods. Ltd. , 294 F.3d 1279, 1282 (11th Cir. 2002) ; Gil v. Winn Dixie Stores, Inc. , 242 F. Supp. 3d 1315, 1320 (S.D. Fla. 2017). Although the Eleventh Circuit has not directly considered whether websites wholly disconnected from physical spaces can be public accommodations under the ADA, the Eleventh Circuit held in Rendon that Title III discrimination covers both "tangible barriers, that is, physical and architectural barriers that would prevent a disabled person from entering an accommodation's facilities and accessing its goods, services and privileges, ... and intangible barriers ... that restrict a disabled person's ability to enjoy the defendant entity's goods, services and privileges." Id. at 1283 & n.5, 1284 (finding plaintiffs' complaint "clearly makes the requisite allegations" to state a claim when they alleged facts supporting that they were "deni[ed] ... the opportunity ... to ... benefit from the goods, services, facilities, privileges, advantages, or accommodations of [a] network television quiz show" that was "held in a concrete space").
Significantly, Rendon held that Title III discrimination is not limited to intangible barriers that prevent physical access to a "concrete space," but rather includes intangible barriers that "deny access to a provided good, service, privilege or advantage" of the "concrete space." Id. at 1283-86 (holding that plaintiffs stated Title III claim because intangible barrier "deprive[d] them of the opportunity to compete for [a] privilege of" defendant's public accommodation); see also Gil , 242 F. Supp. 3d at 1320. Thus, in the Eleventh Circuit,
[W]ebsites are subject to the ADA if a plaintiff can establish a nexus between the website and the physical premises of a public accommodation. Indeed, this concept has support in Rendon ... [which] noted that some courts require a nexus between the challenged service and the premises of the public accommodation, and that the plaintiffs in that matter demonstrated such a nexus.
Gil , 242 F. Supp. 3d at 1320 (citing Rendon , 294 F.3d at 1284 n.8 ).
As this Court held in the Dismissal Order, "[t]o state a claim under the nexus theory, then, Plaintiff must plead sufficient facts to demonstrate that: (1) Defendant's website provides access to a benefit of Defendant's physical stores, and (2) Plaintiff was denied access to that benefit when he could not access Defendant's website."[2] (DE 25 at 9).
Here, Plaintiff states a claim because he pled sufficient facts to demonstrate *1135 that he was denied access to the benefits of Defendant's physical stores due to the inaccessibility of Defendant's website. Plaintiff alleges that Defendant's place of public accommodation is the chain of stores that it owns, operates, or leases throughout the United States, Florida, and Broward County. (Compl. ¶ 4). Plaintiff avers that since "Defendant's website contains graphics, links, headings, forms and text with information that is not fully readable and/or compatible with SRS," Plaintiff was prevented "from enjoying the following benefits of Kohl's physical stores," which included "the opportunity to place an order through the website for free pickup at a designated store of Plaintiff's choice."[3] (Compl. ¶ 10).
By alleging that (1) Defendant's website gives individuals "the opportunity to place an order through the website for free pickup" at Defendant's physical stores, and that (2) Plaintiff was prevented from using that portion of the website because it was not compatible with SRS and inaccessible to him as an individual with blindness, Plaintiff pled facts sufficient to plausibly state a claim under the nexus theory. Because this portion of the website is alleged to be incompatible with SRS, the website acts as an "intangible barrier" to at least one benefit of Defendant's physical stores. Accordingly, Plaintiff states a claim under Title III.
B. Due Process
Defendant argues that even if Plaintiff stated a claim under Title III of the ADA, Plaintiff's claim must be dismissed because it violates Defendant's due process rights to hold it liable for failing to make its website accessible to individuals with visual impairments. Defendant argues that its due process rights would be violated in two ways. First, Defendant contends that "because neither the statute nor its implementing regulations give any guidance whatsoever as to whether a website is covered by the ADA at all," it would violate Defendant's due process rights to hold it liable for not making its website ADA-compliant. (DE 42 at 1-2). Second, Defendant argues that "[h]olding Kohl's liable for failing to make its website compatible with a privately developed software program, in the absence of any laws or regulations giving Kohl's any guidance at all about what a website must do to comply with the ADA, would violate the most basic notions of due process." (DE 42 at 10). Although Defendant is correct that the ADA and its regulations do not specifically mention websites, and that there are no specific government guidelines for Title III ADA-compliant websites, Defendant's arguments fail.
"Due process requires 'that the law must be one that carries an understandable meaning with legal standards that courts must enforce.' " Harris v. Mexican Specialty Foods, Inc. , 564 F.3d 1301, 1310 (11th Cir. 2009) (quoting Giaccio v. Pennsylvania , 382 U.S. 399, 400, 86 S.Ct. 518, 15 L.Ed.2d 447 (1966) ). A law violates due process if it is "so vague and standardless that it leaves the public uncertain as to the conduct it prohibits or leaves judges *1136 and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case." Id. at 1311 (quoting Giaccio , 382 U.S. at 402-03, 86 S.Ct. 518 ). The reason that such "[v]agueness within statutes is impermissible" is because it "fail[s] to put potential violators on notice that certain conduct is prohibited, inform them of the potential penalties for noncompliance, and provide explicit standards for those who apply the law." Id. Since the "consequences of imprecision are qualitatively less severe" for civil penalties than for criminal penalties, "economic regulation is subject to a less strict vagueness test" than criminal regulation. Id. at 1310-11 (quoting Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc. , 455 U.S. 489, 498-99, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982) (internal quotations omitted)).
1. Title III's Application to Websites
Defendant argues that the Complaint should be dismissed on due process grounds because it had no notice that websites were covered by the ADA. To support its position, Defendant points to the absence of any mention of websites in the ADA or its regulations. Defendant's argument fails because the lack of references to websites in the ADA or its regulations does not relieve Defendant of its obligation to ensure that it did not put up "intangible barriers" to the benefits of its physical stores, per Rendon .
Although the Eleventh Circuit's 2002 decision in Rendon did not explicitly mention websites, to the extent that a website acts as an "intangible barrier" that prevents an individual with disabilities from accessing the benefits of a physical public accommodation, Rendon requires the website to be in compliance with the ADA. Id. Other courts in this district have interpreted Rendon to mandate that websites must be compliant with the ADA insofar as they provide access to the benefits of a physical public accommodation. See, e.g., Haynes v. Interbond Corp. of Am. , No. 17-61074, 2017 WL 4863085, at *5 (S.D. Fla. Oct. 16, 2017) ; Gil , 242 F. Supp. 3d at 1320 ; Gomez v. Bang & Olufsen Am., Inc. , No. 16-23801, 2017 WL 1957182, at *3-4 (S.D. Fla. Feb. 2, 2017) ; Access Now, Inc. v. Sw. Airlines, Co. , 227 F. Supp. 2d 1312, 1319-20 (S.D. Fla. 2002). Accordingly, the Eleventh Circuit's holding in Rendon gave Defendant ample notice that under certain circumstances, websites can fall within the scope of Title III ADA discrimination.[4]
*1137 2. Standards for Website Accessibility under the ADA
Defendant's second due process argument is premised on the theory that there are no "laws or regulations giving Kohl's any guidance at all about what a website must do to comply with the ADA." (DE 34 at 7). This argument fails because Defendant had notice that the ADA auxiliary aid requirement is intentionally flexible, and therefore specific regulations are not required to warrant compliance.
The ADA's requirement to provide auxiliary aids in making "the goods, services, facilities, privileges, advantages, or accommodations" of public accommodations accessible to the visually impaired was intended to be variable to fit the circumstances of each case. See Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities, 56 Fed. Reg. 35544-01, 33566 (July 26, 1991) ("The auxiliary aid requirement is a flexible one. A public accommodation can choose among various alternatives as long as the result is effective communication."). "Discrimination" under Title III of the ADA includes "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services ," unless the steps "would fundamentally alter the nature" of the services provided or impose "an undue burden." 42 U.S.C. § 12182(b)(2)(A)(iii) (emphasis added). Under the applicable regulations, "auxiliary aids and services" include "[q]ualified readers; ... screen reader software; ... or other effective methods of making visually delivered materials available to individuals who are blind or have low vision." 28 C.F.R. § 36.303(b)(2).
Defendant argues that the DOJ's ANPRM from July 26, 2010 supports its position when it states that "clear guidance on what is required under the ADA does not exist" and that "inconsistent court decisions, differing standards for determining Web accessibility, and repeated calls for Department action indicate remaining uncertainty regarding the applicability of the ADA to Web sites [sic] of entities covered by [T]itle III." Nondiscrimination on the Basis of Disability; Accessibility of Web Information and Services of State and Local Government Entities and Public Accommodations, 75 Fed. Reg. 43460-01, 43464 (proposed July 26, 2010). Although the statute and regulations do not set forth specific requirements for how a public accommodation must make its website comply with the ADA, it is abundantly clear based on the statute and regulations that "[t]his flexibility is a feature, not a bug, and certainly not a violation of due process." See Kayla Reed v. CVS Pharm., Inc. , No. 17-3877, 2017 WL 4457508, at *5 (C.D. Cal. Oct. 3, 2017). The fact that the relevant regulations explicitly mention "screen reader software" and "other effective methods" as potential sufficient auxiliary aids is further evidence that the DOJ recognized the need for flexibility in providing auxiliary aids to remedy discrimination "as long as the result is effective communication." The lack of specific DOJ guidelines for website accessibility at this time does not violate Defendant's due process rights, but rather the "shades of gray ... the [D]efendant complains of [are] a feature of the Act." Andrews v. Blick Art Materials, LLC , 268 F. Supp. 3d 381, 403-04 (E.D.N.Y. 2017).
Additionally, Defendant relies on Robles v. Dominos Pizza LLC , No. 16-06599, 2017 WL 1330216 (C.D. Cal. Mar. 20, 2017) where the court, resolving a motion for summary judgment on a nearly identical issue, found Defendant's "due process challenge to be meritorious." Id. at *5.
*1138 However, Robles is non-binding and is easily distinguished from this case. In Robles , the court relied on the fact that plaintiff "ask[ed] the Court to require Defendant to comply with a particular - but not fully identified - web accessibility standard issued by a non-government entity that is subject to modification," Web Content Accessibility Guidelines ("WCAG") 2.0. Id. at *5-7. Here, Plaintiff alleges that he was unable to access Defendant's website using the JAWS SRS (Compl. ¶ 2). Because Plaintiff does not ask the court to adopt WCAG or any other specific non-governmental guidelines, Plaintiff's Complaint gives the court flexibility to impose reasonable modifications to Defendant's website, if necessary, consistent with the ADA and its regulations, and therefore comports with due process.[5] This Court does not need to delve further into the question of a potential remedy for Defendant's alleged violation of Title III at this early stage of litigation.
C. Primary Jurisdiction
Finally, Defendant argues that this case should be dismissed based on the doctrine of primary jurisdiction because "the DOJ should have the first opportunity to speak on this issue through a final regulation." (DE 34 at 14). The primary jurisdiction doctrine "is a judicially created doctrine whereby a court of competent jurisdiction may dismiss or stay an action pending a resolution of some portion of the action[ ] by an administrative agency." Smith v. GTE Corp. , 236 F.3d 1292, 1298 n.3 (11th Cir. 2001). The Supreme Court has noted that "[n]o fixed formula exists for applying the doctrine of primary jurisdiction," United States v. W. Pac. R.R. Co. , 352 U.S. 59, 64, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956), and the Eleventh Circuit has not applied one. "In every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." Miss. Power & Light Co. v. United Gas Pipeline Co. , 532 F.2d 412, 419 (5th Cir. 1976).[6]
"[T]he main justifications for the rule ... are [1] the expertise of the agency deferred to and [2] the need for a uniform interpretation of a statute or regulation." Boyes v. Shell Oil Prods. Co. , 199 F.3d 1260, 1265 (11th Cir. 2000) (citation and internal quotations omitted). With regards to the expertise justification, the fact that a technical issue is not "dealt with by the courts on a daily basis ... alone, ... is not a sufficient basis for denying jurisdiction." College Park Holdings, LLC v. Racetrac Petroleum, Inc. , 239 F. Supp. 2d 1322, 1328 (N.D. Ga. 2002) (citing Miss. Power & Light Co. , 532 F.2d at 419 ). When there is a technical issue, courts may consider "ample documentation of the agency's institutional attitudes and remediation expectations ... to permit [them] to fashion appropriate ... relief" that does not conflict with the agency position. Id. (citing Miss. Power & Light Co. , 532 F.2d at 419 ).
Importantly, "the court must always balance the benefits of seeking the agency's aid with the need to resolve disputes *1139 fairly yet as expeditiously as possible ." Miss. Power & Light Co. , 532 F.2d at 419 (citations omitted) (emphasis added). The "added expense and delay to the litigants" that results from invoking the doctrine should make courts "reluctant" to do so. Id.
This Court will join the majority of other courts who have addressed this issue and deny Defendant's motion to dismiss or stay pursuant to the primary jurisdiction doctrine.[7] Looking to the first justification for the primary jurisdiction doctrine - the DOJ's expertise - this Court does not need to rely on the technical expertise of the DOJ to resolve this issue. Courts in the Eleventh Circuit routinely resolve Title III ADA cases based on effective communication claims and the provision of auxiliary aids in various contexts. See, e.g., Silva v. Baptist Health S. Fla., Inc. , 856 F.3d 824, 836 (11th Cir. 2017) (finding plaintiffs' effective communication claims under Title III survive summary judgment and describing fact-intensive, context-specific inquiry in finding appropriate auxiliary aid); Gil v. Winn-Dixie Stores, Inc. , 257 F. Supp. 3d 1340, 1349-50 (S.D. Fla. 2017) (fashioning remedy to make website that provided access to benefits of physical public accommodation accessible to individual with blindness). Although website accessibility may be considered a technical issue, this Court need not invoke the doctrine on that basis alone, especially in light of the previously discussed "ample documentation of the agency's institutional attitudes and remediation expectations." See College Park Holdings, LLC , 239 F. Supp. 2d at 1328 (citing Miss. Power & Light Co. , 532 F.2d at 419 ). The DOJ's flexible regulations permitting auxiliary aids that provide effective communication, and consistent public statements reinforcing its attitude towards website accessibility, give this Court the necessary tools to fashion appropriate relief. Id. (citing Miss. Power & Light Co. , 532 F.2d at 419 ).
Turning to the second justification for the primary jurisdiction doctrine, it is not apparent why any need for uniformity should serve as a basis for dismissing or staying this matter. Defendant has failed to show that the need for uniformity here outweighs this Court's ability to fashion a remedy, if needed, which would apply only in this particular case.
Finally, any benefit to the Court by seeking the DOJ's assistance here is outweighed by the need to resolve this dispute "fairly yet as expeditiously as possible." See Miss. Power & Light Co. , 532 F.2d at 419. There would likely be a substantial delay in the resolution of Plaintiff's claim if this Court dismissed or stayed the matter pending DOJ regulations on website accessibility under Title III. As Defendant correctly points out, all DOJ rulemakings on website accessibility regulations are currently inactive. (DE 34 at 11-12). Accordingly, if Defendant is in violation of Title III, as Plaintiff alleges, Plaintiff will be continually and unlawfully harmed until Defendant is required to comply with DOJ regulations which may never be promulgated. Thus, because this Court is able to handle the issue without agency expertise, there is insufficient evidence of a need for uniformity, and because any dismissal would result in a potentially indefinite alleged violation of Plaintiff's rights, this Court will not invoke the primary jurisdiction doctrine.
*1140 D. Request for Hearing
Defendant also requested a hearing, asserting that its motion "raises significant issues about the reach of the ADA and includes constitutional and jurisdictional arguments about website accessibility claims that are matters of first impression in this district." (DE 34 at 15). Pursuant to S.D. Fla. Local Rule 7.1(b)(2), "[t]he Court in its discretion may grant or deny a hearing as requested." Here, the Court was able to determine all issues raised in Defendant's motion based on the papers filed with the Court and the applicable law. Thus, Defendant's request for hearing is denied.
Accordingly, it is hereby ORDERED AND ADJUDGED that Defendant's Motion to Dismiss (DE 34) is DENIED.
DONE AND ORDERED in Chambers at West Palm Beach, Florida, this 9 day of February, 2018.

Any subsequent references to "the benefits" in this Order incorporate all of the aforementioned statutory language.

Despite the clear standard adopted by this Court in the Dismissal Order, Plaintiff spends most of his response arguing that this Court should not apply the nexus theory because the "website" itself should be considered a benefit of Kohl's physical stores that must be made accessible under the ADA. (DE 42 at 4-12). To support his argument, Plaintiff mischaracterizes the holding of a non-binding case, Nat'l Fed'n of the Blind v. Target Corp. , 452 F. Supp. 2d 946 (N.D. Cal. 2006), and asserts that the nexus theory interpretation "entirely misreads Rendon , the plain text of the statute, and the rules of statutory construction." (DE 42 at 4, 7). Plaintiff fails to convince the Court that Rendon 's interpretation of Title III ADA "discrimination" is inapposite, or that the Court's interpretation contradicts the plain language of § 12182.

Plaintiff makes several other factual allegations, including that he was prevented from "access[ing] ... the location of the physical stores, including which physical store is nearest or more convenient to the Plaintiff; ... obtain[ing] discount coupons to be applied to purchases; ... [and] obtain[ing] information on items are [sic] being offered for sale at a reduced or clearance price." (Compl. ¶ 10). Compared with the opportunity to place an order online for pick-up at a physical store, it is less evident to the Court whether these alleged website functions constitute benefits of Defendant's physical stores. Accordingly, the Court declines to address whether Plaintiff's inability to access these functions of Defendant's website would be sufficient to state a claim under the nexus theory.

In the briefing on Defendant's Motion, both Plaintiff and Defendant focus on whether the DOJ, the agency tasked with promulgating Title III ADA regulations, 42 U.S.C. § 12186(b), has taken action or expressed an opinion as to whether the ADA applies to websites. Since the Court is not ruling that Defendant was on notice that websites generally must comply with the ADA, but rather that websites must comply with the ADA insofar as they provide access to the benefits of physical public accommodations, the Court need not analyze the DOJ's position on the ADA's application to websites to resolve this issue. Nevertheless, the Court notes that even in the absence of final rules on the subject, for at least the past decade, the DOJ has consistently stated publicly that Title III of the ADA applies to websites. See generally Gorecki v. Hobby Lobby Stores, Inc. , No. 17-1131, 2017 WL 2957736, at *4 (C.D. Cal. June 15, 2017) (collecting instances where DOJ advanced position that Title III applies to websites of public accommodations); Nondiscrimination on the Basis of Disability; Accessibility of Web Information and Services of State and Local Government Entities and Public Accommodations, 75 Fed. Reg. 43460-01, 43464-65 (proposed July 26, 2010) (stating that "the Department has been clear that the ADA applies to Web sites [sic] of private entities that meet the definition of 'public accommodations' " and that the DOJ "has also repeatedly affirmed the application of [T]itle III to Web sites [sic] of public accommodations").

See, e.g., Reed , 2017 WL 4457508, at *4-5 (distinguishing Robles ' finding of a due process violation because plaintiff in Robles sought to specifically impose the WCAG as a standard for website accessibility); Gorecki v. Hobby Lobby Stores, Inc. , No. 17-1131, 2017 WL 2957736, at *7 (C.D. Cal. June 15, 2017) (distinguishing Robles as "inapposite because the plaintiff there sought to 'impose on all regulated persons and entities a requirement that they comply with the WCAG 2.0 guidelines without specifying a particular level of success criteria' ").

Opinions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent in the Eleventh Circuit. Bonner v. City of Prichard , 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

See, e.g., Gorecki , 2017 WL 2957736, at *6-7 ; Nat'l Ass'n of the Deaf v. Harvard Univ. , No. 15-30023, 2016 WL 3561622, at *13-20 (D. Mass. Feb. 9, 2016) ; Reed , 2017 WL 4457508, at *6 ; Andrews , 268 F. Supp. 3d at 401-03. But see Robles , 2017 WL 1330216, at *8 (dismissing case addressing website accessibility and Title III under primary jurisdiction doctrine)