Opinion for the Court filed by Chief Judge MIKVA.
 

 MIKVA, Chief Judge:
 

 This ease presents constitutional challenges to a Federal Communications Commission (“FCC” or “the Commission”) order, promulgated at the direction of Congress, barring all radio and television broadcasts of “indecent” material. We believe that the disposition of this case is governed by our prior decision in
 
 Action for Children’s Television v. Federal Communications Commission,
 
 852 F.2d 1332 (D.C.Cir.1988), in which we rejected vagueness and overbreadth challenges to the Commission’s definition of indecency but found that the Commission’s curtailment of “safe harbor” broadcast periods impermis-sibly intruded on constitutionally protected
 
 *1502
 
 expression interests. Accordingly, we grant the petition for review.
 

 I.
 

 The particulars of this case are best understood within the history of government efforts to regulate the broadcast of indecent material. Since 1927, federal law has prohibited the broadcast of “any obscene, indecent, or profane language.” 18 U.S.C. § 1464 (1988);
 
 see also
 
 Radio Act of 1927, § 29, 44 Stat. 1172 (1927) (original prohibition against utterance of “obscene, indecent, or profane language”). In 1975, the Commission essayed to “authoritatively contrue[ ]” the term “indecent” and to distinguish it from the modern definition of obscenity, as formulated by the Supreme Court in
 
 Miller v. California,
 
 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973).
 
 See Pacifica Found.,
 
 56 F.C.C.2d 94, 97 (1975). The Commission defined indecency as “language that describes, in terms patently offensive as measured by contemporary community standards for the broadcast medium, sexual or excretory activities and organs,” and emphasized that its primary regulatory interest lay in protecting children from “language which most parents regard as inappropriate for them to hear.”
 
 Id.
 
 at 98. The Supreme Court upheld the Commission’s finding that a radio station’s afternoon broadcast of a George Carlin comedy monologue entitled “Filthy Words” was indecent under section 1464.
 
 See Federal Communications Comm’n v. Pacifica Found.,
 
 438 U.S. 726, 738-41, 98 S.Ct. 3026, 3034-36, 57 L.Ed.2d 1073 (1978).
 

 The Commission, by its own account, subsequently “took a very limited approach to enforcing the prohibition against indecent broadcasts.”
 
 In re Infinity Broadcasting Corp. of Pennsylvania,
 
 3 FCC Rcd 930 (1987) [hereinafter
 
 Reconsideration Order \
 
 The Commission essentially restricted its enforcement efforts to material broadcast before 10:00 p.m. that involved “the repeated use, for shock value, of words similar or identical to those satirized in the Carlin ‘Filthy Words’ monologue.”
 
 Id.
 
 at 930. Between 1975 and 1987, no broadcasts at all were found actionable under this narrow prohibition.
 
 See id.
 

 By 1987, however, the Commission had concluded that “the highly restrictive enforcement standard employed after the 1975
 
 Pacifica
 
 decision was unduly narrow as a matter of law and inconsistent with our enforcement responsibilities under Section 1464.”
 
 Id.
 
 Returning to the generic definition of indecency it had developed in
 
 Pacifica,
 
 the Commission issued three rulings declaring material that would not have violated the “Filthy Words” test to be indecent.
 
 See Pacifica Found.,
 
 2 FCC Rcd 2698 (1987);
 
 The Regents of the Univ. of California,
 
 2 FCC Rcd 2703 (1987);
 
 Infinity Broadcasting Corp. of Pennsylvania,
 
 2 FCC Red 2705 (1987);
 
 see also New Indecency Enforcement Standards to be Applied to All Broadcast and Amateur Radio Licensees,
 
 2 FCC Rcd 2726 (1987) (summarizing Commission policies). Significantly, two of the cited broadcasts had aired after 10:00 p.m., the time period previously identified by the Commission as a “safe harbor” during which the risk of children in the broadcast audience was thought to be minimal.
 
 See id.
 
 at 2726. On reconsideration, the Commission affirmed its warnings with respect to the three broadcasts and noted, in response to requests for more specific rules regarding time channeling, that 12:00 midnight was its “current thinking” as to when the risk of children in the broadcast audience could reasonably be thought minimized.
 
 See Reconsideration Order,
 
 3 FCC Red at 934, 937 n. 47.
 

 Reviewing the Commission’s order, we first rejected petitioners’ vagueness and overbreadth challenges to the Commission’s generic definition of indecency.
 
 See Action for Children’s Television v. FCC,
 
 852 F.2d 1332, 1338-40 (D.C.Cir.1988) [hereinafter
 
 ACT I].
 
 However, we vacated the Commission’s rulings that the two post-10:00 p.m. broadcasts were indecent. In addition to calling the Commission’s findings “more ritual than real” and its underlying evidence “insubstantial,”
 
 Id.
 
 at 1341-42, we opined that a “reasonable safe harbor rule” was constitutionally mandated.
 
 Id.
 
 at 1343 n. 18. Accordingly, we instructed the Commission to determine on
 
 *1503
 
 remand, “after a full and fair hearing, ... the times at which indecent material may be broadcast.”
 
 Id.
 
 at 1344.
 

 Before the Commission could carry out this court’s mandate, Congress intervened. On October 1, 1988, two months after the
 
 A CTI
 
 decision issued, the President signed into law a 1989 appropriations bill containing the following rider:
 

 By January 31, 1989, the Federal Communications Commission shall promulgate regulations in accordance with section 1464, title 18, United States Code, to
 
 enforce the provisions of such section on a 24 hour per day basis.
 

 Pub.L.No. 100-459, § 608, 102 Stat. 2228 (1988) (emphasis added). Concluding that “[t]he directive of the appropriations language affords us no discretion,” the Commission promulgated a new rule pursuant to section 1464 prohibiting all broadcasts of indecent materials.
 
 See Enforcement of Prohibitions Against Broadcast Obscenity and Indecency in 18 U.S.C. § 1464,
 
 4 FCC Rcd 457 (1988) [hereinafter
 
 Order \
 
 codified at 47 CFR § 73.3999 (1990) (restrictions on the transmission of obscene or indecent language). The Commission also “abandoned its] plans to initiate a proceeding in response to the concerns raised by” the
 
 ACT I
 
 panel.
 
 Order,
 
 4 FCC Red at 457.
 

 A panel of this court granted petitioners’ motion to stay enforcement of the ban pending judicial review.
 
 See Action for Children’s Television v. FCC,
 
 No. 88-1916 (D.C.Cir. Jan. 23, 1989). Six months later, while briefing on the validity of the Commission’s order was underway in this court, the Supreme Court issued an opinion finding a blanket ban on indecent commercial telephone message services unconstitutional.
 
 Sable Communications of Cal., Inc. v. FCC,
 
 492 U.S. 115, 109 S.Ct. 2829, 106 L.Ed.2d 93 (1989). Believing that
 
 Sable
 
 left open the possibility that indecent broadcasts may be proscribed if the Commission could prove that no less restrictive measure would effectuate the government’s compelling interests, the Commission sought and obtained a remand from this court in order to assemble the relevant data supporting a total ban.
 
 Action for Children’s Television v. FCC,
 
 No. 88-1916 (D.C.Cir. Sept. 13, 1989) (remanding record to the FCC for a “full and fair hearing on the issue of the propriety of indecent broadcasting”).
 

 The Commission subsequently solicited public comments on the validity of a total ban on broadcast indecency.
 
 See Enforcement of Prohibitions Against Broadcast Indecency in 18 U.S.C. § 1464,
 
 4 FCC Red 8358 (1989). After receiving and reviewing the comments, the Commission issued a comprehensive report concluding that “a 24-hour prohibition on indecent broadcasts comports with the constitutional standard the Supreme Court enunciated in
 
 Sable
 
 for the regulation of constitutionally protected speech.”
 
 Enforcement of Prohibitions Against Broadcast Indecency in 18 U.S.C. § 1464,
 
 5 FCC Rcd 5297, 5297 (1990). Finding a “reasonable risk that significant numbers of children ages 17 and under listen to radio and view television at all times” without “active” parental supervision, the Commission concluded that no alternative to a total ban would effectuate the government’s compelling interest in protecting children from broadcast indecency.
 
 See id.
 
 at 5297, 5306. Current proceedings before this court followed issuance of the Commission’s report.
 

 II.
 

 Petitioners, an amalgam of broadcasters, industry associations, and public interest groups, present several constitutional challenges to the Commission’s action. First, they claim (some more spiritedly than others) that the Commission’s definition of indecency is unconstitutionally vague and overbroad. Second, they contend that a total ban on broadcast indecency cannot withstand constitutional scrutiny. We address petitioners’ contentions in turn.
 

 A.
 
 Vagueness and Overbreadth Challenges
 

 Petitioners contend that the Commission’s definition of indecency — “language or material that, in context, depicts or describes, in terms patently offensive as measured by contemporary community stan
 
 *1504
 
 dards for the broadcast medium, sexual or excretory activities or organs,”
 
 Order,
 
 4 FCC Rcd at 457 — is unconstitutionally vague. A statute or regulation is void for vagueness if it “ ‘either forbids or requires the doing of an act in terms so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application.’ ”
 
 Roberts v. United States Jaycees,
 
 468 U.S. 609, 629, 104 S.Ct. 3244, 3256, 82 L.Ed.2d 462 (1984) (quoting
 
 Connally v. General Construction Co.,
 
 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926)).
 

 We have already considered and rejected a vagueness challenge to the Commission’s definition of indecency. In
 
 ACT I,
 
 we noted that the Supreme Court, entertaining a similar challenge in
 
 Pacifica,
 
 had quoted various elements of the definition with approval and had ultimately affirmed the Commission’s application of the definition to the broadcast under review.
 
 See ACT I,
 
 852 F.2d at 1338-39. In our view, the Supreme Court’s decision in
 
 Pacifica
 
 dispelled any vagueness concerns attending the definition.
 
 See id.
 
 at 1339 (“[I]f acceptance of the FCC’s generic definition of ‘indecent’ as capable of surviving a vagueness challenge is not implicit in
 
 Pacifica,
 
 we have misunderstood Higher Authority and welcome correction.”);
 
 cf. Information Providers’ Coalition v. FCC,
 
 928 F.2d 866, 874, (9th Cir.1991) (rejecting vagueness challenge to similar definition of indecency in dial-a-porn context). Our holding in
 
 ACT I
 
 precludes us from now finding the Commission’s generic definition of indecency to be unconstitutionally vague.
 

 Some of the petitioners raise the additional claim that the definition of indecency is unconstitutionally overbroad. They contend that, because the Commission fails to recognize “serious merit” as an absolute defense to a charge of indecency, the definition sweeps even constitutionally protected expression within its ambit.
 
 See Houston v. Hill,
 
 482 U.S. 451, 459 107 S.Ct. 2502, 2508, 96 L.Ed.2d 398 (1987) (noting that statutes “that make unlawful a substantial amount of constitutionally protected conduct may be held facially invalid even if they also have legitimate application”).
 

 We rejected an identical overbreadth challenge in
 
 ACT I.
 
 We noted that indecent material qualifies for First Amendment protection regardless of merit, but that even material with “significant social value” may have a strong negative impact on children.
 
 See ACT I,
 
 852 F.2d at 1340. We thus found the Commission’s method of identifying material suitable for broadcast only during the late night, safe harbor hours — whereby merit is treated as a “relevant factor in determining whether material is patently offensive” but “does not render such material
 
 per se
 
 not indecent” — to be permissible.
 
 See id.
 
 at 1339-40. Given that our decision today reaffirms the need for safe harbor periods during which indecent material may be broadcast and invalidates the Commission’s attempt to ban such broadcasts altogether, we have no reason to revisit
 
 ACT I’s
 
 conclusion that the Commission’s generic definition of indecency comports with constitutional over-breadth requirements.
 

 B.
 
 Challenge to Total Ban on Broadcast Indecency
 

 Petitioners’ core challenge is to the constitutional validity of a total ban on the broadcast of indecent material. Their contentions are two-fold: First, they claim that, under Supreme Court and circuit precedent, the government may not completely suppress indecent speech in any medium. Second, they argue that even if a total ban could theoretically be justified, the Commission’s action here fails to satisfy the strict scrutiny standard recently reaffirmed by the Supreme Court in
 
 Sable.
 

 We agree with petitioners that circuit precedent compels our rejection today of a total ban on the broadcast of indecent material. In
 
 ACT I,
 
 we stated that:
 

 Broadcast material that is indecent but not obscene is protected by the first amendment; the FCC may regulate such material only with due respect for the high value our Constitution places on freedom and choice in what the people say and hear.
 

 
 *1505
 
 852 F.2d at 1344. Addressing the scope of permissible regulation, we explained that:
 

 Content-based restrictions ordinarily “may be sustained only if the government can show that the regulation is a precisely drawn means of serving a compelling state interest.” [citation omitted] The Supreme Court has recognized a government’s interest in “safeguarding the physical and psychological well-being of a minor” as “compelling.” [citations omitted] But that interest, in the context of speech control, may be served only by carefully-tailored regulation.
 

 Id.
 
 at 1343 n. 18.
 

 We found that the Commission’s elimination of the post-10:00 p.m. “safe-harbor” period failed to satisfy these constitutional standards. Specifically, we concluded that:
 

 [T]he precision necessary to allow scope for the first amendment shielded freedom and choice of broadcasters and their audiences cannot be accomplished, we believe, unless the FCC adopts a reasonable safe harbor rule.
 

 Id.
 
 We therefore instructed the Commission, on remand, to “afford broadcasters clear notice of reasonably determined times at which indecent material safely may be aired.”
 
 Id.
 
 at 1343.
 

 Our holding in
 
 ACT I
 
 that the Commission must identify some reasonable period of time during which indecent material may be broadcast necessarily means that the Commission may not ban such broadcasts entirely. The fact that Congress itself mandated the total ban on broadcast indecency does not alter our view that, under
 
 ACT I,
 
 such a prohibition cannot withstand constitutional scrutiny. While “we do not ignore” Congress’ apparent belief that a total ban on broadcast indecency is constitutional, it is ultimately the judiciary’s task, particularly in the First Amendment context, to decide whether Congress has violated the Constitution.
 
 See Sable,
 
 109 S.Ct. at 2838. Moreover, we note that introduction of the appropriations rider preceded issuance of our decision in
 
 ACT I;
 
 thus, the relevant congressional debate occurred without the benefit of our constitutional holding in that case.
 
 See
 
 134 Cong. Rec. S9911-S9915 (daily ed. July 26, 1988).
 

 Nothing else in the intervening thirty-four months has reduced the precedential force of
 
 ACT I.
 
 Indeed, the Supreme Court’s decision in
 
 Sable,
 
 striking down a total ban on indecent commercial telephone messages, affirmed the protected status of indecent speech and reiterated the strict constitutional standard that government efforts to regulate the content of speech must satisfy.
 
 See Sable,
 
 109 S.Ct. at 2836 (noting that “[s]exual expression which is indecent but not obscene is protected by the First Amendment,” and stating that the government may “regulate the content of constitutionally protected speech in order to promote a compelling interest if it chooses the least restrictive means to further the articulated interest”).
 
 See also Consolidated Edison Co. v. Public Serv. Comm’n,
 
 447 U.S. 530, 540, 100 S.Ct. 2326, 2334, 65 L.Ed.2d 319 (1980). Even the Commission, prior to congressional enactment of the appropriations rider, shared this view.
 
 See Reconsideration Order,
 
 3 FCC Red at 931 (dismissing suggestion that section 1464 should be read to totally prohibit the broadcast of indecent material, as such a reading would “run afoul of [the] constitutional premise” that the Commission “may only do that which is necessary to restrict children’s access to indecent broadcasts” and “may not go further so as to preclude access by adults who are interested in seeing or hearing such material”).
 

 Thus, neither the Commission’s action prohibiting the broadcast of indecent material, nor the congressional mandate that prompted it, can pass constitutional muster under the law of this circuit.
 

 III.
 

 We appreciate the Commission’s constraints in responding to the appropriations rider. It would be unseemly for a regulatory agency to throw down the gauntlet, even a gauntlet grounded on the Constitution, to Congress. But just as the FCC may not ignore the dictates of the legislative branch, neither may the judiciary ignore its independent duty to check the con
 
 *1506
 
 stitutional excesses of Congress. We hold that Congress' action here cannot preclude the Commission from creating a safe harbor exception to its regulation of indecent broadcasts.
 

 Our decision today effectively returns the Commission to the position it briefly occupied after
 
 ACT I
 
 and prior to congressional adoption of the appropriations rider. The Commission should resume its “plans to initiate a proceeding in response to the concerns raised” in
 
 ACT I,
 
 which it “abandoned]” following Congress’ mandate.
 
 Order,
 
 4 FCC Red at 457. We direct the Commission, in “redetermin[ing], after a full and fair hearing, ... the times at which indecent material may be broadcast,” to carefully review and address the specific concerns we raised in
 
 ACT I:
 
 among them, the appropriate definitions of “children” and “reasonable risk” for channeling purposes, the paucity of station- or program-specific audience data expressed as a percentage of the relevant age group population, and the scope of the government’s interest in regulating indecent broadcasts.
 
 See ACT I,
 
 852 F.2d at 1341-44.
 

 For the foregoing reasons, the petition for review is granted, the order under review is vacated, and the case is remanded for further proceedings not inconsistent with this opinion.
 

 It is so ordered.