**GILLETT COMMUNICATIONS OF ATLANTA, INC., d/b/a WAGA–TV5, Plaintiff,**

v.

**Daniel BECKER, Daniel Becker for Congress Committee, and the Federal Communications Committee. Defendants.**

**No. 1:92–CV–2544–RHH.**

United States District Court, N.D. Georgia, Atlanta Division.

Oct. 30, 1992.

---

Judson Graves, Alston & Bird, Atlanta, GA, for plaintiff.

Donald W. Johnson, Atlanta, GA, for defendants.

## ORDER

ROBERT H. HALL, District Judge.

This case is before the Court on Gillett Communications of Atlanta, Inc., d/b/a WAGA–TV5's ("WAGA–TV") Application for Temporary Restraining Order and Petition for Declaratory Judgment, filed on October 28, 1992. A hearing was held on October 29, 1992. The Court GRANTS IN PART and DENIES IN PART the Application and Petition.

## BACKGROUND

WAGA–TV is engaged in the business of television broadcasting in Atlanta and the surrounding area and operates under a license granted by the Federal Communications Commission ("FCC"). Defendant Daniel Becker is a legally qualified candidate for the United States Congress in Georgia's Ninth Congressional District. Defendant Federal Communications Commission is an agency of the United States government and has regulatory authority over WAGA–TV as a broadcast licensee. This case arises out of the Becker Campaign Committee's ongoing attempt to purchase air time on WAGA–TV for paid political advertising.

On October 26, 1992, Defendant Becker presented to WAGA–TV for airing a paid political advertising videotape, which is approximately thirty minutes in length. Defendant Becker has requested WAGA–TV to air the videotape between 4:00 and 5:00 p.m. on Sunday, November 1, 1992, immediately following the broadcast of the National Football League game between the Atlanta Falcons and the Los Angeles Rams.

At issue in this case is one particular segment of the videotape entitled "Abortion in America: The Real Story."

WAGA–TV contends that the videotape is indecent, and therefore, it should not be required to air it during the requested hours. WAGA–TV seeks declaratory and injunctive relief.

## DISCUSSION

### A. *Jurisdiction of the Court*

■ Before the Court can address the merits of the petition, it must determine whether it has subject matter jurisdiction. WAGA–TV contends that jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1346 because: (1) this action arises under the Constitution and laws of the United States; and (2) it is an action against an agency of the United States. Defendant Becker contends that this Court does not have subject matter jurisdiction. In support, Becker relies on 47 U.S.C. § 402 which provides that appeals from the decisions and orders of the Commission may be taken to the United States Court of Appeals for the District of Columbia in certain cases.[1] Furthermore, 28 U.S.C. § 2342 provides that the various federal courts of appeal have exclusive jurisdiction to enjoin, set aside, suspend, or to determine the validity of all final orders of the FCC as made reviewable by 47 U.S.C. § 402.

Thus, it is clear that the court of appeals, not this Court, would have exclusive jurisdiction to review any decision made or order issued by the FCC concerning the subject matter of this case, except in limited circumstances as addressed in caselaw. However, that is not the issue before the Court. The Court must determine whether it has jurisdiction in the absence of FCC action.

In *Allnet Communication Service v. NECA*, 965 F.2d 1118 (D.C.Cir.1992), the plaintiff filed a complaint in district court seeking a declaration that he was not liable for certain charges because they had not been published as required by the Commu-

nications Act, 47 U.S.C. § 203. The district court dismissed for lack of subject matter jurisdiction.

On appeal, the D.C. Circuit noted that there was "no want of subject matter jurisdiction in the conventional sense. Diversity jurisdiction under 28 U.S.C. § 1332 is not disputed...." *Id.* at 1120. However, the court of appeals did affirm the dismissal of the suit, concluding that the FCC had primary jurisdiction over the case. *Id.*

■ In support of jurisdiction, WAGA cites 28 U.S.C. § 1331, which provides jurisdiction in all cases arising under federal law.[2] To determine whether a claim falls within § 1331, the Court must determine whether "a federal cause of action would appear on the face of a well-pleaded complaint." *Hudson Ins. Co. v. American Elec. Corp.*, 957 F.2d 826, 828 (11th Cir. 1992). When faced with a declaratory judgment action, the court must determine whether the claim "anticipated by the declaratory judgment plaintiff arises under federal law." *Id.* Here, it clearly does. WAGA anticipates that both administrative and penal sanctions may be sought against it for violation of federal law. *See* 18 U.S.C. § 1464 and 47 U.S.C. §§ 312 and 315. Thus, like the situation in *Allnet*, there is no want of subject matter jurisdiction in the traditional sense.

■ However, the Court's inquiry does not end here. The argument can be made that this court should defer to the primary jurisdiction of the FCC, the agency charged with enforcement of the statutory provisions at issue. As the Supreme Court has stated:

No fixed formula exists for applying the doctrine of primary jurisdiction. In every case the question is whether the reasons for the existence of the doctrine are present or whether the purposes it serves will be aided by its application in the particular litigation.

---

1. The section lists seven instances.

2. WAGA also cites 28 U.S.C. § 1346. However, it is clear that this section "grants federal courts jurisdiction over actions for money damages

only, not suits seeking declaratory judgment." *Travelers Indem. Co. v. United States*, 593 F.Supp. 625, 626 (N.D.Ga.1984) (Hall, J.).

*United States v. Western Pacific Railroad Co.,* 352 U.S. 59, 64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956). One reason for invoking the doctrine is to benefit from the specialized expertise of the agency. *Miss. Power & Light v. United Gas Pipe Line,* 532 F.2d 412, 420 (5th Cir,1976). The Court acknowledges that the FCC has developed an expertise in the application § 1464 regarding indecent broadcasts. However, the Court also notes that the standard to be applied is one that references contemporary community standards, not a highly technical field of knowledge. Furthermore, the FCC has already spoken on the other issue before the Court: namely, whether there is an indecency exception to the reasonable access and no censorship requirements. The Court adopts the same position, finding it sound as a matter of statutory construction. Furthermore, the Court notes that the question of whether an exception exists is a legal question, not a factual question which would require the agency's expertise. "When the agency's position is sufficiently clear or nontechnical ... courts should be very reluctant to refer" to the agency under the doctrine of primary jurisdiction. *Miss. Power & Light,* 532 F.2d at 419; *see also Atlantic Richfield Co. v. U.S. Dept. of Energy,* 769 F.2d 771, 781–782 (D.C.Cir.1984) (exhaustion of administrative remedies is not necessary where resort to agency would be futile); *Erdman Technologies Corp. v. US. Sprint Communications Co.,* 1992 WL 77540, 1992 U.S.Dist. LEXIS 4585 (S.D.N.Y.1992) (doctrine of primary jurisdiction represents a version of the doctrine of administrative exhaustion).

The strongest factor militating against dismissal of this case based upon the doctrine of primary jurisdiction is the time crunch in which the litigants find themselves and the importance of the issues involved. Based upon the evidence presented, it is doubtful that the FCC will be able to reach a decision in this case prior to Sunday, a mere two days away. The election will be held in four days. After that, the issue becomes effectively moot. Defendant FCC contends in its brief that it is able to rule on matters in a timely fashion.

However, the FCC ignores the fact that WAGA–TV petitioned the FCC for a declaratory ruling prior to the August 11, 1992 run off election concerning a prior political advertisement of Mr. Becker's, and yet the FCC did not respond until nearly two weeks after the election was held. Failure to rule in a timely fashion thwarts the whole purpose behind the indecency prohibition: the protection of children. WAGA–TV has indicated that without some type of relief from this court, they will run the video. The Court is mindful of this Circuit's instruction: "the court must always balance the benefits of seeking the agency's aid with the need to resolve disputes fairly yet as expeditiously as possible." *Miss. Power,* 532 F.2d at 419.

The Court concludes that it has jurisdiction to decide this case. The Court now turns to the merits.

### B. *Declaratory Ruling*

WAGA–TV petitions this Court for a declaratory ruling that WAGA–TV may "channel" the videotape to the "safe harbor" hours between 12:00 midnight and 6:00 a.m., without violating the "reasonable access" and "no censorship" provisions of the Federal Communications Act. The Court so rules.

This suit involves two different statutory provisions regulating WAGA–TV's broadcasting of Mr. Becker's political advertisement. First, 47 U.S.C. §§ 312(a) and 315(a) provide:

The Commission may revoke any station license or construction permit—

(7) for willful or repeated failure to allow reasonable access to or to permit purchase of reasonable amounts of time for the use of a broad-casting station by a legally qualified candidate for Federal elective office on behalf of his candidacy. 47 U.S.C. § 312(a).

If any licensee shall permit any person who is a legally qualified candidate for any public office to use a broadcasting station, he shall afford equal opportunities to all other such candidates for that office in the use of such broadcasting station: *Provided,* That such licensee

shall have no power of censorship over the material broadcast under the provisions of this section.

47 U.S.C. § 315.

Second, 18 U.S.C. § 1464 provides:

Whoever utters any obscene, indecent or profane language by means of radio communications shall be fined not more than $10,000 or imprisoned not more than two years, or both.[3]

Violation of either statute constitutes grounds for revocation of a broadcaster's FCC license. 47 U.S.C. §§ 312(a)(6) and (7), 315.

With regard to these statutory provisions, the Court faces the following issues: (1) Does the prohibition against the broadcasting of indecent material constitute an exception to the requirements of reasonable access, equal opportunities and no censorship? (2) Is the videotape indecent under 18 U.S.C. § 1464? (3) If so, may WAGA–TV channel the videotape into the safe harbor hours of 12:00 midnight and 6:00 a.m.? (4) Does this violate the First Amendment? The Court will address each in turn.

1. *Does the prohibition against the broadcasting of indecent material constitute an exception to the requirements of reasonable access, equal opportunities and no censorship?*

■ Yes. Apparently, there is no reported decision concerning this issue. However, it is the FCC's position that:

A broadcaster would be justified in refusing access to a candidate who intended to utter obscene or *indecent* language, because Section 312(a)(6) ... must be granted to carve an exception to Section 312(a)(7).... The application of both traditional norms of statutory construction as well as an analysis of the legislative evolution of Section 315 [of the Communications Act] militate in favor or reading [18 USC] section 1464 as an exception to Section 315.

Memorandum by FCC Staff, Jan. 6, 1984, attached as exhibit to Plaintiff's Memorandum.

■ The Court gives due deference to a reasonable construction of the statutes put forth by the agency charged with implementing the acts. *RJR Nabisco, Inc. v. United States,* 955 F.2d 1457, 1464 (11th Cir.1992). Furthermore, the Court finds that this conclusion does not significantly undercut the purpose of the "reasonable access" and "no censorship" provisions of the Communications Act: namely to prevent discrimination against candidates and to allow candidates a full opportunity to relate to the public their political stand. *KVUE, Inc. v. Austin Broadcasting Corp.,* 709 F.2d 922 (5th Cir.1983), *aff'd,* 465 U.S. 1092, 104 S.Ct. 1580, 80 L.Ed.2d 114 (1984); *Flory v. FCC,* 528 F.2d 124 (7th Cir.1975).

2. *Is the videotape indecent under 18 U.S.C. § 1464?*

■ Upon careful consideration of all of the evidence, the Court answers this question in the affirmative.

The FCC defines indecency as:

language or material that, in context, depicts or describes, in terms patently offensive as measured by contemporary community standards for the broadcast medium, sexual or excretory activities or organs.

*In re Goodrich Broadcasting, Inc.,* 6 FCC Rcd 7484 (1991). In *FCC v. Pacifica Foundation,* 438 U.S. 726, 98 S.Ct. 3026, 57 L.Ed.2d 1073 (1978), the Supreme Court ultimately affirmed the FCC's application of this definition in regulating the broadcast under review. "[T]he linchpin of indecency enforcement is the protection of children from inappropriate broadcast material." *In the Matter of Liability of Sagittarius Broadcasting Corporation,* (available on WESTLAW, FCOM–FCC database), 1992 FCC LEXIS 6042, at *4 (October 23, 1992) (citing *Action for Children's Television v. F.C.C.,* 852 F.2d 1332, 1340 (D.C. 1988)). The extent to which a broadcast is indecent focuses on whether it is readily

---

**3.** This prohibition has been recognized as applying to television as well as radio broadcasts.

*Action for Children's Television v. FCC,* 932 F.2d 1504 (D.C.Cir.1991).

understandable to children in the audience. *Id.*

The Court has viewed the videotape in its entirety and found that it contains descriptions and depictions in violation of § 1464. Specifically, beginning with the segment "Abortion in America: The Real Story," the videotape depicts the actual surgical procedure for abortion. During a short segment, approximately four minutes in length,[4] the videotape contains graphic depictions and descriptions of female genitalia, the uterus, excreted uterine fluid, dismembered fetal body parts, and aborted fetuses. This portion of the videotape depicts these activities and materials in a manner which is patently offensive according to contemporary community standards. This is so in light of the context of the entire video. The Court further concludes that the evidence shows that the images, words, and depictions in the videotape would be readily understandable to children in the audience.

In addition to the video, WAGA–TV provided testimony concerning viewer reactions to the previous one-minute spot. Many calls were taken; they were longer and more involved than those which the station usually receives in response to programming. The evidence supports the conclusion that the previous video was much less graphic and did not contain views of the female sexual organ. WAGA–TV also presented expert testimony of two psychiatrists concerning the effect of the video on children. Both psychiatrists testified that the videotape would have a negative impact on children in the viewing audience. Thus, the Court determines upon viewing the evidence in its entirety, there is ample support for the conclusion that the videotape contains indecent materials, the broadcasting of which is prescribed by 18 U.S.C. § 1464.

3. *May WAGA–TV channel the Videotape into the safe harbor hours of 12:00 midnight and 6:00 a.m.?*

■ In *Action for Children's Television v. F.C.C.,* 932 F.2d 1504 (D.C.1991), the court rejected a twenty-four hour ban on the broadcasting of indecent materials.

However, the court also made clear that some regulation will withstand constitutional scrutiny. *Id.* The court directed the FCC to develop a "safe harbor" exception to its regulation of indecent broadcasts; that is, a time in which indecent material may be broadcast.

Congress has also directed the FCC to create regulations designating the hours between 12:00 midnight and 6:00 a.m. as safe harbor hours. The FCC has begun to implement the Congressional mandate. *See FCC Proceeding to Implement Regulations to Restrict Broadcasting of Indecent Programming,* 1992 FCC LEXIS 5392 (September 17, 1991). Mr. Sander, president of WAGA–TV, testified that significant numbers of children would be watching television between 4:00 and 5:00 p.m. on Sunday. Mr. Sander further testified that between the hours of nine and ten, the percentage of viewers between the ages of 2 and 17 would still be significant, although there may be more supervision of children. The number of children in the audience would decline as the evening progresses. WAGA–TV also presented the testimony of two psychiatrists who stated that although parental supervision may lessen the detrimental effects on children, it may also exacerbate them. Jack Sander further testified that during the time slot of 12:00 midnight to 6:00 A.M., everyone is not asleep. Rather, late night ratings are comparable to weekend day programming with regard to the adult viewing audience.

The Court concludes that WAGA–TV has presented sufficient evidence to support the conclusion that the videotape should be shown between 12:00 midnight and 6:00 a.m. The Court is convinced that this time slot best accommodates the two competing interests and rights: the interest in protecting children from indecent materials and Mr. Becker's right to broadcast his political advertisement.

4. *First Amendment Concerns*

■ Neither this Court's order, nor Plaintiff's compliance therewith act as prior restraints on Defendant's speech in vio-

---

**4.** The section at issue goes from 428 on the VCR counter to 877 on the counter.

lation of the First Amendment. A content-based restriction on speech, especially political speech, must be "a precisely drawn means of serving a compelling state interest" to withstand constitutional scrutiny. *Action for Children's Television v. FCC,* 852 F.2d 1332, 1343 n. 18 (D.C.Cir.1988). The Supreme Court has found the government's interest in "safeguarding the physical and psychological well-being of a minor" to be compelling. *New York v. Ferber,* 458 U.S. 747, 756–57, 102 S.Ct. 3348, 3354, 73 L.Ed.2d 1113 (1982). Accordingly, the Circuit Court for the District of Columbia recognized that the FCC may regulate indecent material, so long as it does so with "due respect for the high value our Constitution places on freedom and choice in what the people say and hear." *Action,* 852 F.2d at 1344.

This Court's order does not deprive Defendant of the ability to air his advertisement on Plaintiff's programing. It merely channels what is decidedly indecent material to a time slot that sufficiently reduces the chances of injury to the "psychological well-being" of minors in the community. Thus, this Court's order does not violate Defendant's First Amendment rights.

### C.  *Injunctive Relief*

■ WAGA–TV seeks injunctive relief against Becker, the Becker Campaign and the FCC. The Court concludes that WAGA–TV has met its burden with respect to Becker, and the Becker campaign. First, WAGA–TV has proven that it will prevail on the merits of its claim, as discussed above. Second, WAGA–TV has proven that it faces a substantial threat of irreparable injury. WAGA–TV faces the dilemma of choosing between seemingly conflicting obligations as a broadcaster, and the failure to comply with either one could result in revocation of its license. Furthermore, and perhaps most importantly, WAGA–TV faces the possibility of substantial public disapproval of its broadcasting the videotape during hours in which

children are very likely to see it. The evidence demonstrates that WAGA–TV received numerous phone calls in response to Defendant Becker's last advertisement, and testimony supports the conclusion that any effort to explain that WAGA–TV was under a legal obligation to broadcast the material was ineffective in diminishing the disapproval. The objectionable portion of this video is over four times as long as the previous video, and testimony supports the conclusion that this video is also much more graphic and contains images and descriptions absent in the last video.[5] Third, WAGA–TV has proven that its own injury outweighs the injury to Defendant Becker and the Becker campaign. The two Defendants are still free to air the political campaign video; it simply must be aired during a time in which children are less likely to see the indecent material contained within it. Finally, the Court concludes that a strong public interest supports injunctive relief: protecting children from indecent materials, an interest recognized by many courts and by the legislative body as compelling.

■ The Court's conclusion, however, is different with respect to the FCC. First, as discussed above, under normal circumstances, this Court would have invoked the primary jurisdiction doctrine, thus allowing the FCC to pass on the issues at hand. Given the circumstances, the Court believes it would be improper to enjoin the activities of the FCC. To do so would upset the balance of power the primary jurisdiction doctrine is designed to protect. Second, this Court questions whether it has the authority to enjoin the FCC from exercising its administrative powers. Clearly, judicial review of FCC's decisions and orders, including the power to enjoin enforcement of orders, lies with the courts of appeal. *See* 47 U.S.C. § 402 and 28 U.S.C. § 2342. Finally, the Court remains convinced that WAGA–TV has an adequate remedy with respect to any action taken by the FCC which may be contrary to this Order: review by the court of appeals.

---

**5.** The FCC ruled that the previous video was not indecent under 18 U.S.C. § 1464. Defendants'

Exhibit 1.

Thus, with respect to injunctive relief, the Court HEREBY ORDERS:

Defendants Daniel Becker and the Daniel Becker for Congress Committee are enjoined and restrained from requiring WAGA–TV to air the Becker videotape at any time other than between the hours of 12:00 midnight and 6:00 A.M.

## CONCLUSION

In conclusion, the Court GRANTS WAGA–TV's request for declaratory relief. The Court GRANTS WAGA–TV's request for injunctive relief against Defendant Becker and Becker's Campaign. The Court DENIES WAGA–TV's request for injunctive relief against the FCC.

Furthermore, the Court has been informed by counsel for the FCC that they expect to rule on the issues presented in this Order by 5:00 today. In the event that the FCC does issue an order specifically ruling on each of the issues presented in this case as follows:

(1) Does the prohibition against the broadcasting of indecent material constitute an exception to the requirements of reasonable access, equal opportunities and no censorship?

(2) Is the videotape indecent under 18 U.S.C. § 1464?

(3) May WAGA–TV channel the videotape into the safe harbor hours of 12:00 midnight and 6:00 A.M.?

this order shall become MOOT.

So ORDERED this 30th day of October, 1992.