The UNITED STATES of America,
Plaintiff–Counterdefendant,

v.

EVERGREEN MEDIA CORPORATION OF CHICAGO, AM, Licensee of Radio Broadcast Station WLUP (AM), Defendant–Counterplaintiff,

and

The American Civil Liberties Union of Illinois, Intervenor–Defendant Counterplaintiff.

No. 92 C 5600.

United States District Court,
N.D. Illinois, E.D.

Aug. 20, 1993.

Bruce A. Taylor, Sp. Atty. Cr. Div., U.S. Dept. of Justice, Jane E. Mago and Roberta L. Cook, Sp. Attys. to the U.S. Atty. Gen., Washington, DC, for plaintiff.

David F. Randell, Latham & Watkins, Chicago, IL, Eric L. Bernthal, Reed M. Hundt, Karen Brinkmann, and Raymond B. Grochowski, Latham & Watkins, Washington, DC, for defendant.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

### BACKGROUND

This action was instigated by the Federal Communications Commission ("FCC") pursuant to its powers under 47 U.S.C. § 503(b)(1)(D), to institute an action for a forfeiture penalty for the broadcast of obscene, indecent or profane language in violation of 18 U.S.C. § 1464. Evergreen Media Corporation of Chicago (AM) ("Evergreen"), the object of the FCC's attention, is the licensee of WLUP–AM, a Chicago radio station. The FCC alleges that Evergreen willingly violated § 1464 on the basis of comments aired during the Steve and Garry Show, part of WLUP's regular programming, during the afternoon in August, 1987 and March, 1989.

The FCC issued a Notice of Apparent Liability in the amount of $6,000.00 on November 30, 1989. An order of forfeiture was issued over Evergreen's objection on January 28, 1991. 6 FCC Rcd 502. Evergreen's motion to reconsider was denied on October 18, 1991. 6 FCC Rcd 5950. Plaintiff's complaint seeks to collect the fine of $6,000.00 imposed. Defendant has counterclaimed, challenging the constitutionality of § 1464. On May 14, 1993, the court granted leave to the American Civil Liberties Union ("ACLU") to intervene in the controversy as co-defendant/counterclaimant on the basis of common legal questions. Fed.R.Civ.P. 24(b)(2).

Defendant's counterclaims raise several challenges to the constitutionality of § 1464, both facially and as applied to the conduct subject to forfeiture. First, defendants suggest that § 1464 is facially unconstitutional both for vagueness and for being overbroad. Second, they contend the statute is unconstitutional in its application to the conduct at issue because it demonstrates that the FCC's interpretation of the statute is not the least restrictive means of accomplishing the goals of § 1464. Finally, defendants argue that the FCC's pattern of enforcement of the statute constitutes both a violation of substantive due process, and of the Equal Protection Clause.

The FCC has filed a motion to dismiss defendants' counterclaims or, in the alternative, for summary judgment. Defendant's in turn have filed their own motion for summary judgment on the counterclaims. Evergreen has also filed a motion for partial judgment on the pleadings, which the court will consider in a separate opinion.

As defendants did not have a hearing before the FCC, the court will consider the case for forfeiture . de novo. 47 U.S.C. § 504(a).

### STATEMENT OF FACTS

Sexual expression which is indecent but not obscene receives First Amendment protection, but may be regulated according to its content to promote a compelling government interest, by the least restrictive means to further that interest. *Sable Communications of California, Inc. v. FCC,* 492 U.S. 115, 125, 109 S.Ct. 2829, 2836, 106 L.Ed.2d 93 (1989). The FCC defines as "indecent," "language or material that depicts or describes, in terms patently offensive as measured by contemporary community standards for the broadcast medium, sexual or excretory activities and organs." 62 Rad. Reg.2d 1218, 1219 (1987); *see also Pacifica Foundation v. FCC,* 556 F.2d 9, 11 (D.C.Cir. 1977), *rev'd FCC v. Pacifica Foundation,* 438 U.S. 726, 98 S.Ct. 3026, 57 L.Ed.2d 1073 (1978). The gravamen of the commission's

complaint is that the incidents addressed in its forfeiture fit within this definition.

The incidents giving rise to this order took place on the Steve and Garry Show on March 30, 1989, at approximately 5:10 p.m., and August 19, 1987 between 2:20 and 4:30 p.m. The March 1989 incident involves a discussion between several members of the show over the appearance of Vanessa Williams on the television show "Later, with Bob Costas." The show members were critical of Bob Costas' attempt to defend Williams' loss of her Miss America title due to pictures of her which appeared in *Penthouse* magazine. In discussing the issue, show members mocked the dialogue on the program, getting descriptive of the *Penthouse* pictures in the process:

> She was licking that other woman's vagina. I want to tell you pal ... Went down on that other woman and oh God, you had your tongue in her vagina. It was fabulous. A lot of your Miss Americas can. I don't picture Phyliss George being able to do it like that.... He had to put his leg up on the ottoman because he had a stiff-oh. God, I'm hard as a rock right now Vanessa. You're so honest Bob.

The August 1987 incidents involve statements made by callers which were allowed on the air during the show. The first of these incidents involve a song parody created by a caller called "Kiddie Porn:"[1]

> Welcome to my camp, you're a grown up little man, let me rub out that cramp. My, you've got a lovely hand, look at who your are and where you want to go. Drop your drawers and strike a pose, my tripod's all aglow, its Kiddie Porn. Do you remember when we filmed that hot summer day, you were nude and you discovered I was gay. Yes, I know but let's go roll out in the hay.

The second incident involves a caller who had a joke to tell at the expense of homosexuals. The punch line of the joke was that the number one line at a gay bar is "May I push your stool in for you."

During proceedings before the commission, Evergreen presented evidence to the commission in support of its argument that the incidents in question did not violate the FCC's test for indecency. In particular, Evergreen argued that the material was not patently offensive to the average member of the community, that those portions of the material which were expressed in the form of innuendo did not fit the FCC's definition for indecency as applied to innuendo, and that prosecution of the 1987 incidents was time-barred. Evergreen also presented its constitutional claims to the FCC at that time.

## ANALYSIS

The bases for the FCC's motion are that defendants' constitutional claims have either been declared invalid as a matter of law, or lack the presence of necessary genuine issues of material fact. The motion to dismiss asserts that a trio of cases, *FCC v. Pacifica Foundation*, 438 U.S. 726, 98 S.Ct. 3026, 57 L.Ed.2d 1073 (1978), *Action for Children's Television*, 852 F.2d 1332 (D.C.Cir.1988) ("Act I"), and *Action for Children's Television v. FCC*, 932 F.2d 1504 (D.C.Cir.1991) ("Act II"), have previously considered and rejected most of defendants' grounds for relief. The first task for the court, then, is to examine just what the holdings in those cases are.

■ Well, almost. Before even getting this far, the court must address an argument by the FCC that it lacks jurisdiction to hear claims by defendants based on its policies, practices or regulations. A proceeding to enjoin, set aside, annul or suspend an order of the FCC is generally governed by 28 U.S.C. § 2342(1). 47 U.S.C. § 402(a). Section 2342(1) provides that the court of appeals has exclusive jurisdiction to review "final orders" of the FCC. An order finalizing a notice of apparent liability is a final order within the meaning of § 2342(1). *Illinois Citizens Committee For Broadcasting, et al. v. FCC*, 515 F.2d 397, 402 (D.C.Cir.1975). However, 47 U.S.C. § 504(a) which gives district courts jurisdiction to hear suits for recovery of forfeitures determined under 47 U.S.C. § 503(b), provides an exception to

---

1. For the more tuneful, the lyrics are apparently meant to fit the music of the Neil Diamond song "September Morn."

§ 2342(1) for forfeiture orders. *Pleasant Broadcasting Co. v. FCC*, 564 F.2d 496, 501 (D.C.Cir.1977). The court has jurisdiction to hear all of defendants' counterclaim.

## I. Pacifica, Act I and Act II

### A. *Pacifica*

In *Pacifica* a decidedly fractured opinion, the majority indicated that to avoid the unnecessary determination of constitutional questions, "the focus of our review" would be on the Commission's determination that the speech at issue was indecent as broadcast. *Pacifica*, 438 U.S. at 735, 98 S.Ct. at 3033. The majority first held that § 1464, which allows fines for the broadcast of indecent speech, was not "censorship" within the meaning of 47 U.S.C. § 326, which prohibits prebroadcast restriction of radio communication. *Id.*, at 737–38, 98 S.Ct. at 3034. The majority next held that "indecent" language under § 1464 had a separate and distinct meaning from "obscene" language. *Id.*, at 741, 98 S.Ct. at 3036.

The remaining portion of the *Pacifica* opinion with majority support is part IV–C. There, the court first expressed two complementary rationales for a lower level of First Amendment protection for broadcast communication, the uniquely pervasive nature of the medium, and its unique accessibility to children. *Id.*, at 748–49, 98 S.Ct. at 3039–40. The majority then "emphasizes the narrowness" of its holding, indicating variables which made up the specific context in which it held the broadcast to be indecent. *Id.*, at 750, 98 S.Ct. at 3040.

### B. Act I

In *Act I*, the Court of Appeals for the District of Columbia Circuit upheld the FCC's definition of indecency, but vacated commission rules prohibiting indecent broadcasts during certain hours. The court began its analysis by distinguishing the scenario presented for its review with that before the *Pacifica* court, finding that in the facts before it the commission was presenting a general standard for review, rather than a narrowly focused agency order. *Act I*, 852 F.2d at 1337. This adherence to the commission's

general standard represented a departure from past enforcement practice—measuring broadcast material against a general standard rather than confining enforcement to instances similar to the situation in *Pacifica*, that is a repeated use of patently offensive sexual or excretory-related words for shock value. *Id.*, at 1337–38.

The court then went on to consider the constitutional vagueness challenge raised by the petitioners. The court first indicated that any "vagueness" attributable to the problem at hand was not the result of a lack of reasoned analysis by the commission in creating its definition of indecency, but was inherent to the subject matter being regulated. *Id.*, at 1338. The court proceeded to infer from the *Pacifica* opinion that the commission's definition of indecency satisfied the unconstitutional vagueness test of *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926), and went so far as to openly invite correction by the Supreme Court if it had misapprehended the import of *Pacifica*. *Id.*, at 1339.

The Act I court next proceeded to address the petitioner's arguments that the commission's definition was unconstitutionally overbroad, an issue admittedly not addressed in *Pacifica* by a majority of the court. The court addressed this argument as it applied to the merit of broadcast material, finding that merit did not render patently offensive material per se not indecent. *Id.*, at 1340. However, the court then indicated that the commission had provided an insufficient foundation for a channelling rule restricting indecent broadcasts to certain times of the day. *Id.*, at 1341–44.

### C. Act II

The *Act II* court, in a unanimous opinion by Judge Mikva, began by characterizing the *Pacifica* holding as limited to a determination of whether a particular broadcast was indecent under § 1464. *Act II*, 932 F.2d at 1506. The court also summarized the *Act I* holding, indicating it dismissed vagueness and overbreadth challenges to the statute, but that the commissions's "safe harbor" or channelling rule was reasonably tailored to fit the commissions interest in limiting expo-

sure of children to this material. *Id.* A number of intervening events, such as a rider to a 1989 appropriations bill that prohibited the Commission from erecting a safe harbor, and the Supreme Court's *Sable Communications* decision, led the commission to initiate rulemaking proceedings on whether a total ban on indecent material was constitutionally permissible.

The court again rejected claims that the commission's definition of indecency was vague, and that it was overbroad for failing to recognize serious merit as an absolute defense to indecency. *Id.,* at 1508. It then also followed the *Act I* court in rejecting a total ban on indecent materials, finding it to be an impermissible restriction of speech protected by the First Amendment. *Id.,* at 1509.

Where does all this leave the parties? It is clear to the court that the *Act I* and *Act II* decisions are the controlling authority in this area of the law. They have been adopted by both the Second and Ninth Circuits. *See Dial Information Services v. Thornburgh,* 938 F.2d 1535, 1541 (2d Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 966, 117 L.Ed.2d 132 (1992); *Information Providers' coalition v. FCC,* 928 F.2d 866, 875 (9th Cir.1991). While this circuit has yet to commit itself to these decisions, it is likely that it will do so.

■ The impact of these decisions is that defendants' vagueness challenge to § 1464 must be dismissed. Defendant's overbreadth challenge must be dismissed as well, but only insofar as it addresses the factor of the merit of the broadcast. Otherwise, the FCC's definition of indecency and its application must be governed by *Sable Communications.* The commission's interest in protecting the physical and psychological well-being of minor children is a compelling interest justifying regulation of otherwise constitutionally protected indecent speech, but this regulation must be carefully tailored to achieve the

commission's commendable goals. *Sable Communications,* 492 U.S. at 125, 109 S.Ct. at 2836.[2] The defendants' remaining constitutional challenges must survive the FCC's motion to dismiss as well.

## II. The Motions for Summary Judgment

As a logical consequence of the foregoing, the court cannot find that the FCC is entitled to judgment as a matter of law on any of the constitutional challenges in defendants' counterclaims other than those dismissed. It still remains to be decided whether enforcement of the FCC's definition of indecency is unconstitutional as applied to the broadcast material in question because it is not specifically tailored to serve the commission's interests; whether the FCC's enforcement practice has been arbitrary and capricious so as to constitute a violation of due process; and whether enforcement would constitute an equal protection violation.

Both sides have engaged in some presentation of the facts necessary to determine whether genuine issues of material fact exist on any of these questions. However, regardless of the adequacy of the presentations made by the parties on these issues, they ignore a more pressing matter—whether, presuming constitutionality, the broadcast material which is the subject of the forfeiture is indecent at all.

A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them. *Lying v. Northwest Indian Cemetery Protective Association,* 485 U.S. 439, 445–46, 108 S.Ct. 1319, 1323, 99 L.Ed.2d 534 (1988). While this circuit has held that this principle carries less weight in the First Amendment context, it has only done so to relax constitutional standing requirements, not to allow a party to assert a constitutional claim when a statutory bases for relief were available. *Sequoia Books, Inc. v. Ingemunson,* 901 F.2d 630, 634 (7th Cir.1990). The appropriate question is

---

2. This is essentially the same standard as that governing defendants' equal protection challenge. *See Austin v. Michigan Chamber of Commerce,* 494 U.S. 652, 666, 110 S.Ct. 1391, 1401, 108 L.Ed.2d 652 (1990). While the *Pacifica* court laid out the justifications for more narrow regulation of publicly broadcast speech than other speech, *Pacifica,* 438 U.S. at 748–49, 98 S.Ct. at 3039–40, the regulation may still not unnecessarily interfere with First Amendment rights. *Sable Communications,* 492 U.S. at 125, 109 S.Ct. at 2836.

whether decision of the case on constitutional issues *would entitle defendants to relief beyond what they would be entitled to on their statutory claims. Lying,* 485 U.S. at 446, 108 S.Ct. at 1323.

This action is, first and foremost, a forfeiture collection proceeding. If defendants prevail on whether the broadcast material at issue is "indecent," then the FCC may no longer maintain this action, and defendants have no other immediate need for relief. While defendants may very well have standing to assert a constitutional claim because of the "chill" the FCC's definition of indecency exerts on the protected First Amendment activities of itself and others, as stated *supra,* if not for the FCC's forfeiture action these claims would not be before this court. Defendants will be able to assert their remaining constitutional defenses to § 1464 if necessary, but it is not yet necessary.

## CONCLUSION

For the foregoing reasons, the FCC's motion to dismiss the defendants' counterclaims is granted in part and denied in part. The parties' motions for summary judgment are denied without prejudice.